Filed 6/21/18

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
)         S231009
    v. )
)     Ct.App. 2/5 B257775
RANDOLPH D. FARWELL, )
)     Los Angeles County
    Defendant and Appellant. )   Super. Ct. No. TA130219
_____ )

Defendant, Randolph Farwell, entered a stipulation through his counsel that admitted all of the elements of a charged crime, making it tantamount to a guilty plea. The question is how to assess the validity of the stipulation when Farwell was neither advised of, nor expressly waived, his privilege against self-incrimination, or his rights to jury trial and confrontation. *People v. Howard* (1992) 1 Cal.4th 1132 (*Howard*) held that a plea is valid notwithstanding the lack of express advisements and waivers "if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." (*Id*. at p. 1175.) Some appellate courts have concluded, however, that the *Howard* test only applies to "incomplete" advisements but not to "silent records," where there is a total absence of advisements and waivers. We hold that the totality of the circumstances test applies in silent record cases as well. Applying that test, the record fails to affirmatively show that Farwell understood his counsel's stipulation had the effect of waiving his constitutional trial rights. The stipulation was the

1

only basis for the jury's misdemeanor verdict. We reverse the Court of Appeal's judgment affirming that conviction.

## I. BACKGROUND

Farwell was charged with gross vehicular manslaughter as a felony in count 1, and, in count 2, misdemeanor driving when his driver's license was suspended or revoked.[1] Before trial, defense counsel stated Farwell was willing to plead no contest to the misdemeanor charge. Alternatively, he moved to bifurcate the trial on that allegation. The prosecutor objected to both requests. The court did not accept a change of plea and denied the bifurcation motion.

After defense counsel had cross-examined the first witness, the parties entered into the following stipulation, which was read to the jury: "[O]n June 21st, 2013, Randolph Farwell was driving a motor vehicle while his license was suspended for a failure to appear, and . . . when he drove, he knew his license was suspended." The stipulation encompassed all of the elements of Vehicle Code section 14601.1, subdivision (a), as alleged in count 2. (See CALCRIM No. 2220.) The court instructed the jury that it must accept the stipulated facts as true. When the stipulation was entered, the court did not advise Farwell of the constitutional rights implicated by a guilty plea or the stipulation. Nor did it solicit a personal waiver of those rights.

The jury found Farwell guilty as charged. He was sentenced to 13 years in prison for vehicular manslaughter, with a concurrent term of six months for the misdemeanor conviction.

---

[1] Penal Code section 192, subdivision (c)(1); Vehicle Code section 14601.1, subdivision (a). It was further alleged that he had suffered a prior serious felony conviction within the meaning of Penal Code sections 667, subdivisions (a)(1) and (d) and 1170.12, subdivision (b).

2

A divided Court of Appeal rejected Farwell's challenge to his conviction for driving with a suspended license. Acknowledging that the stipulation was tantamount to a guilty plea, the majority applied the totality of the circumstances test from *Howard*, *supra*, 1 Cal.4th 1132. Considering Farwell's criminal history, the trial court's instructions to the panel during jury selection, and the fact that Farwell was in the midst of a jury trial when the stipulation was entered, the court held that "defendant knew of and waived his constitutional rights when he and his counsel made the strategic decision to enter the stipulation." Writing in dissent, Justice Mosk concluded that a " 'totality of the circumstances' " review could not be performed in a "silent record" case, which he defined as a circumstance where there "was no express advisement to, or waiver by, defendant of his constitutional rights at the time of the stipulation." Relying on *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*), Justice Mosk concluded that "[i]n silent record cases, a reviewing court cannot infer that the defendant knowingly and intelligently waived his rights to trial, to remain silent, and to confront witnesses." Accordingly, he would hold that "reversal [was] required . . . without a harmless error analysis."

## II. DISCUSSION

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." (*Boykin v. Alabama* (1969) 395 U.S. 238, 243 (*Boykin*).) These include the privilege against self-incrimination, the right to trial by jury, and the right to confrontation. (*Ibid.*) The effect of a stipulation for purposes of *Boykin* "is defined by the rights a defendant surrenders." (*People v. Robertson* (1989) 48 Cal.3d 18, 40.) A stipulation that admits all of the elements of a charged crime necessary for a conviction is tantamount to a guilty plea. (*People v. Little* (2004) 115 Cal.App.4th 766, 776–778; cf. *People v. Cross* (2015) 61 Cal.4th 164, 171, 174–175 (*Cross*);

3

*In re Mosley* (1970) 1 Cal.3d 913, 924–925.) Accordingly, the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights. (*North Carolina v. Alford* (1970) 400 U.S. 25, 31; *Boykin*, at p. 244; *Howard*, *supra*, 1 Cal.4th at p. 1175.)

Farwell's stipulation conclusively established the stipulated facts as true and completely relieved the prosecution of its burden of proof on count 2. While the jury was still required to return a verdict on that count, its limited function did not amount to a jury trial in the constitutional sense. As we explained in *People v. Adams* (1993) 6 Cal.4th 570 (*Adams*) involving an enhancement: "It is true . . . that such evidentiary stipulations are not an admission that the allegation is true. When a defendant stipulates to the existence of a fact in controversy, however, the jury is instructed that it must regard the fact as conclusively proved. (See CALJIC No. 1.02.) Therefore, while the jury or court must still find the allegation is true, we presume that the instruction will be followed, that the jury will consider the facts conclusively proved, and that the jury will find the allegation true. [¶] That being the case, when the stipulation admits every element of the enhancement that is necessary to imposition of the additional penalty, for purposes of *Boykin-Tahl*[2] analysis we see no meaningful distinction between an admission of the truth of an enhancement allegation and an admission of all of the elements necessary to imposition of the additional punishment authorized by the enhancement." (*Adams*, at p. 580, fn. 7.)

By entering the stipulation, Farwell effectively surrendered his privilege against self-incrimination, his right to confrontation, and his right to a jury trial on count 2. The People do not contend otherwise.

---

**2** *In re Tahl* (1969) 1 Cal.3d 122.

*Boykin* held that "[w]e cannot presume a waiver of these three important federal rights from a silent record." (*Boykin*, *supra*, 395 U.S. at p. 243.) The defendant there was charged with multiple counts of robbery with a possible punishment of death. At arraignment, he pleaded guilty to all charges. The Supreme Court observed that "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." (*Id*. at p. 239.) The defendant received a jury trial on the question of punishment and was sentenced to death. (*Id*. at p. 240.) The Supreme Court held that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought . . . ." (*Id*. at pp. 243–244, fn. omitted.) The court found "reversible error 'because the record d[id] not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.' " (*Id*. at p. 244.)

In *Howard*, *supra*, 1 Cal.4th 1132, we interpreted the scope of *Boykin*'s mandate. There the defendant personally admitted the truth of a prior felony conviction. Before doing so, the court admonished him that he had a right to a jury determination of the allegation and a right to confront prosecution witnesses, but did not mention the privilege against self-incrimination. (*Id*. at pp. 1179–1180.) On review, we noted early California authority had held that "the failure to obtain explicit waivers of each of the three *Boykin/Tahl* rights required reversal regardless of prejudice." (*Id*. at p. 1177.) Nonetheless, we concluded that "the overwhelming weight of authority no longer supports the proposition that the federal Constitution requires reversal when the trial court has failed to give explicit admonitions on each of the so-called *Boykin* rights." (*Id*. at p. 1175.) The United States Supreme Court "has never read *Boykin* as requiring explicit

5

admonitions on each of the three constitutional rights." (*Id*. at p. 1177.) Instead, under the federal Constitution, "a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." (*Id*. at p. 1175.)[3] Upon review of the entire record, we concluded that the defendant's admission of the prior conviction was valid despite the absence of an explicit admonition on the privilege against self-incrimination. (*Howard*, at p. 1180.)

Although *Howard* involved an admission of a prior conviction, subsequent cases have assumed that the totality of the circumstances test also applies when a defendant pleads guilty to a substantive offense. (*People v. Allen* (1999) 21 Cal.4th 424, 439, fn. 4 [citing cases]; *People v. Collins* (2001) 26 Cal.4th 297, 310–311 (*Collins*).) This approach makes good sense. *Howard* interpreted *Boykin*, which involved a guilty plea to a substantive offense, and *Howard*'s logic applies with equal force in both contexts.

In *Mosby*, *supra*, 33 Cal.4th 353, we again considered the validity of the defendant's admission of a prior conviction when he had received incomplete *Boykin* admonitions. Mosby was told of and expressly waived his right to jury trial. He was not advised of his right against self-incrimination or to confront adverse witnesses, nor did he expressly waive those rights. (*Id*. at pp. 356, 358.)[4] *Mosby* affirmed that *Howard* had "shifted [the focus] from whether the defendant

---

[3]    *Howard* reaffirmed the requirement of explicit admonitions and waivers as a prophylactic rule of judicial procedure. (*Howard*, *supra*, 1 Cal.4th at pp. 1178–1179; see also *Cross*, *supra*, 61 Cal.4th at p. 170.)

[4]    We noted that the defendant did not have a federal or state constitutional right to a jury trial on the fact of a prior conviction, but found that "[w]hen trial is required by statute, we shall assume for the purpose of this discussion that a defendant's due process trial rights, at least under our state Constitution, encompass the rights to remain silent and to confront witnesses." (*Mosby*, *supra*, 33 Cal.4th at p. 360; see *Almendarez–Torres v. United States* (1998) 523 U.S. 224, 243–247.)

6

received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived." (*Mosby*, at p. 361.) "[I]f the transcript does not reveal complete advisements and waivers," the reviewing court "must go beyond the courtroom colloquy" and "examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Ibid*.) Applying this test, we upheld the waiver, noting that the defendant had just undergone a jury trial at which he had exercised his right to confrontation and had declined to testify. (*Id*. at p. 364.) Additionally, he " 'had experience in pleading guilty in the past.' " (*Id*. at p. 365.) *Mosby* disapproved several Court of Appeal opinions that had invalidated guilty pleas involving incomplete *Boykin-Tahl* advisements. (*Id*. at p. 362; see *id*. at p. 365, fn. 3.)

Neither *Howard* nor *Mosby* were "silent-record cases," devoid of an admonition or waiver. (*Mosby*, *supra*, 33 Cal.4th at p. 361.) *Cross*, *supra*, 61 Cal.4th 164, involved that circumstance. Cross was charged with felony infliction of corporal injury, with a prior felony conviction for that same offense. (*Id*. at p. 169; Pen. Code, § 273.5, former subd. (e)(1).) At trial, defense counsel stipulated to the existence and date of the prior conviction. (*Cross*, at p. 169.) The court accepted the stipulation without informing Cross of his trial rights or the penal consequences of the stipulation. Cross gave no personal waiver. Based on the stipulation, a jury found the prior conviction allegation true. (*Ibid*.)

We concluded that the defendant had "admitted 'every fact necessary to imposition of the additional punishment other than conviction of the underlying offense' " and should have received *Boykin-Tahl* warnings before his admission. (*Cross*, *supra*, 61 Cal.4th at p. 174.) However, "[t]he failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively

7

shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*Cross*, at p. 179, quoting *Howard*, *supra*, 1 Cal.4th at p. 1175.) We quoted *Mosby* for the proposition that "in applying the totality of the circumstances test, a reviewing court must 'review[] the whole record, instead of just the record of the plea colloquy,' and that 'previous experience in the criminal justice system is relevant to a recidivist's " 'knowledge and sophistication regarding his [legal] rights.' " ' " (*Cross*, at pp. 179–180, quoting *Mosby*, *supra*, 33 Cal.4th at p. 365.) Applying this test, we concluded the record was insufficient: "The court did not ask whether Cross had discussed the stipulation with his lawyer; nor did it ask any questions of Cross personally or in any way inform him of his right to a fair determination of the prior conviction allegation. [Citation.] The stipulation occurred during the prosecutor's examination of the first witness in the trial; the defense had not cross-examined any witness at that point. [Citation.] Further, we have no information on how the alleged prior conviction was obtained." (*Cross*, at p. 180.)

Farwell urges that *Cross* did not intend to overrule *Mosby* inasmuch as *Mosby* had drawn a distinction between silent record cases and incomplete advisement cases. *Mosby* did summarize the holdings of several Court of Appeal cases involving silent records (*Mosby*, *supra*, 33 Cal.4th at pp. 361–362), and observed, "In all of the cases just discussed a jury trial on a substantive offense preceded the defendants' admissions of prior convictions. These defendants were not told on the record of their right to trial to determine the truth of a prior conviction allegation. Nor did they expressly waive their right to trial. In such cases, in which the defendant was not advised of the right to have a trial on an alleged prior conviction, we cannot infer that in admitting the prior the defendant has knowingly and intelligently waived that right as well as the associated rights to silence and confrontation of witnesses" (*id*. at p. 362). This statement, however,

8

was dictum. *Mosby* was advised of his right to a jury trial on the prior conviction allegation. (*Id*. at p. 358.) Thus, we had no occasion to consider what test applies when the defendant is not advised of *any* of his trial rights. It was unnecessary for *Cross* to overrule *Mosby*.

Farwell argues that *Mosby* "made a clear statement that the circumstantial evidence test is not applicable to silent record cases." He quotes the following passage: "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' . . . ." (*Mosby*, *supra*, 33 Cal.4th at p. 361.) According to Farwell, our use of the word "complete" means that the *Howard* test applies to "incomplete" advisements, but not silent record cases. He reads too much into this single word. *Mosby*'s use of the word "complete" correlates with the record before it, which involved an incomplete advisement. It does not stand for the proposition that the totality of the circumstances test cannot be applied in silent record cases. That issue was simply not before the court.

We now hold that the *Howard* totality of the circumstances test applies in *all* circumstances where the court fails, either partially or completely, to advise and take waivers of the defendant's trial rights before accepting a guilty plea. *Howard* explained that "the high court has never read *Boykin* as requiring explicit admonitions on each of the three constitutional rights. Instead the court has said that the standard for determining the validity of a guilty plea 'was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' [Citations.] 'The new element added in *Boykin*' was not a requirement of explicit admonitions and waivers but rather 'the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' " (*Howard*, *supra*, 1 Cal.4th at p. 1177.) This inquiry does not

9

depend on the presence of at least one *Boykin* admonition. Rather, "[a]fter our *Howard* decision, an appellate court must go beyond the courtroom colloquy" to assess a challenge to the validity of the defendant's plea. (*Mosby*, *supra*, 33 Cal.4th at p. 361.) As amicus curiae Criminal Justice Legal Foundation observes, "[r]ather than carving out a set of cases as being exempt from the *Howard* 'totality of the circumstances' rule, *Mosby* is better understood as identifying a frequently occurring fact pattern that typically fails [to satisfy] the rule."[5] We agree and therefore reject as unilluminating the distinction previously drawn between incomplete advisement cases and silent record cases.[6] Use of a single test is consistent with *Boykin* jurisprudence, has the benefit of consistency, and honors *Howard*'s determination that federal standards should govern the effectiveness of a waiver of federal constitutional rights. (*Howard*, at p. 1178.)

---

[5] Indeed, all of the silent record cases cited in *Mosby, supra,* 33 Cal.4th at pages 361–362, can be understood as having applied the *Howard* standard and found it not satisfied. (See *People v. Campbell* (1999) 76 Cal.App.4th 305, 310 [court applied the *Howard* test and held the record was "inadequate to support a voluntary and intelligent waiver"]; *People v. Stills* (1994) 29 Cal.App.4th 1766, 1770–1771 [court applied the *Howard* test and held it could not conclude the admission was voluntary and intelligent]; *People v. Johnson* (1993) 15 Cal.App.4th 169, 178 [court applied the *Howard* test and found the record did not reflect an actual waiver]; *People v. Moore* (1992) 8 Cal.App.4th 411, 414, 418 [court applied the *Howard* test and concluded defendant's admission was not voluntary and intelligent]; see also *People v. Little*, *supra*, 115 Cal.App.4th at p. 780 [court applied the *Howard* test and concluded that "the record here is materially different from that in *Howard* and does not establish a knowing and voluntary stipulation"].)

[6] To the extent it holds to the contrary, *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1421, is disapproved. We also disapprove the categorical statement in *People v. Campbell, supra*, 76 Cal.App.4th at page 310 that, "[u]nder *Howard*, we are not permitted to imply knowledge and a waiver of rights on a silent record."

Farwell's arguments to the contrary are unpersuasive. He relies by analogy on *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*) for the proposition that a failure to advise of trial rights is reversible per se. In *Blackburn*, defense counsel requested a bench trial in a mentally disordered offender (MDO) recommitment proceeding. The court did not advise the defendant of his statutory right to a jury trial or obtain a personal waiver of that right. (*Id*. at p. 1116.) Interpreting Penal Code section 2972, subdivision (a), we held that the *statute* requires the court to inform a defendant personally of the jury trial right and obtain a personal waiver before holding a bench trial. (*Blackburn*, at pp. 1116, 1124–1127.)[7] The court's omission, we concluded, effectively denied the defendant his statutory right to a jury trial on the entire cause. (*Blackburn*, at pp. 1132–1134.) That error constituted a "miscarriage of justice" under article VI, section 13 of the California Constitution and required reversal without regard to the strength of the evidence. (*Blackburn*, at pp. 1132–1136.)[8]

*Blackburn* did not speak to the standard for evaluating whether a waiver is voluntary and intelligent. On the contrary, it specifically distinguished its facts from the circumstances which trigger the *Howard* inquiry. The court emphasized: "[A] trial court's failure to properly advise an MDO defendant of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the

_____

[7] An exception exists where there is substantial evidence that the defendant lacks the capacity to enter into a waiver. In that instance, defense counsel controls the waiver decision. (*Blackburn*, *supra*, 61 Cal.4th at pp. 1116, 1127–1130.)

[8] Farwell also cites *People v. Tran* (2015) 61 Cal.4th 1160. That case employed the same analysis as *Blackburn*, and reached the same result, in the context of commitment extension proceedings for persons found not guilty by reason of insanity. (*Tran*, at pp. 1165–1170.)

11

circumstances, that the defendant's waiver was knowing and voluntary." (*Blackburn*, *supra*, 61 Cal.4th at p. 1136, citing *Howard*, *supra*, 1 Cal.4th at p. 1178.) *Howard* had expressly rejected a rule of automatic reversal. (*Howard*, at pp. 1177–1178.) Nothing in *Blackburn* calls that holding into question.

Farwell also urges a distinction between waiver of the right to jury trial on the one hand, and the privilege against self-incrimination and right to confrontation on the other. He argues: "In the context of a defendant who is about to plead guilty, *Howard* and its progeny have applied the 'totality of the circumstances' test only to the failure of the trial court to warn and obtain express waivers of the rights to avoid self-incrimination and to confront and cross-examine witnesses. That test has not been applied when the jury waiver was not express, voluntary and intelligent." Neither *Boykin* nor *Howard* supports this attempted distinction. When crafting its holding, the *Boykin* court looked to standards for waivers in other contexts, including the voluntariness of a defendant's confession. (*Boykin*, *supra*, 395 U.S. at p. 242, citing *Jackson v. Denno* (1964) 378 U.S. 368, 387.) It nowhere suggested that the right to jury trial was superior to the constitutional rights discussed by analogy, or to the other trial rights implicated by a plea of guilty. On the contrary, *Boykin* placed the privilege against self-incrimination, the right to jury trial, and the right to confrontation on equal footing: "We cannot presume a waiver of these *three important* federal rights from a silent record." (*Boykin*, at p. 243, italics added.) *Howard*'s test is similarly unamenable to Farwell's proffered interpretation. An inquiry into whether the totality of the circumstances affirmatively shows that the plea is voluntary and intelligent bears no relation to prioritizing the rights at issue. (See, e.g., *People v. Sovereign* (1993) 27 Cal.App.4th 317, 320–321 [applying *Howard* test where defendant was advised of his right to confrontation and his privilege against compelled self-incrimination, but not his right to a jury trial].)

12

It bears emphasis that silent record cases will face their own practical hurdle. The failure to advise a defendant of *any* trial rights will make it much harder to demonstrate a plea was properly accepted. Under *Howard*, the record must "*affirmatively show*[]" that the defendant's waiver of constitutional rights was voluntary and intelligent. (*Howard*, *supra*, 1 Cal.4th at p. 1179, italics added.) The absence of express advisements is particularly troublesome in the context of stipulations that are tantamount to a guilty plea. When the defendant's counsel enters into such a stipulation, the record must affirmatively demonstrate that the defendant understood the agreement effectively extinguished his trial rights. (See *Collins*, *supra*, 26 Cal.4th at p. 305; *Adams*, *supra*, 6 Cal.4th at p. 577.)

Applying the *Howard* totality of circumstances test, the Court of Appeal majority concluded that Farwell "knew of and waived his constitutional rights when he and his counsel made the strategic decision to enter the stipulation." The majority focused on comments the trial court made to Farwell and to the jury in his presence about the charged crimes, the People's burden of proof, Farwell's right to cross-examine witnesses and his right not to testify. It also concluded that Farwell was aware of his constitutional rights "because he was in the midst of that very jury trial, after a witness had been called and cross examined when he and his attorney made the strategic trial decision to stipulate to the elements of count 2." Finally, it noted that Farwell had two prior convictions and that his previous experience in the criminal justice system was relevant to demonstrate his knowledge of his legal rights.

We need not decide whether these circumstances affirmatively demonstrate that Farwell was aware of his constitutional trial rights as a general matter. Instead, we find the record insufficient for another reason: There is no affirmative

showing that Farwell understood he was waiving his trial rights by virtue of the *stipulation* entered on his behalf.

A comparison of the circumstances surrounding the plea negotiations with the circumstances of the later stipulation brings this point into focus. In pretrial discussions, defense counsel indicated that she had conferred with her client and that he was willing to plead no contest to the charge of driving while his license was suspended or revoked, "so that can be an issue *taken out of the hands of the jury*." (Italics added.) As noted, Farwell's offer to plead no contest was resisted by the prosecutor and ultimately rejected by the court. The prosecutor did offer to accept a plea on the vehicular manslaughter charge, and the court discussed that offer with Farwell. During that discussion, the court summarized the charges and explained Farwell's basic trial rights as follows: "[T]he prosecutor will present her witnesses" and "defense counsel will point out the problems with the case, if you will, or at least attack some of the testimony. That's her job, is to confront those witnesses." The court then explained that "when it's all said and done, 12 people there, having heard all this testimony, and having also heard the strengths and weaknesses of the case" would either return a verdict of guilty, not guilty, or fail to reach a verdict. Noting that the prosecutor had offered a plea bargain of 13 years in prison, the court asked Farwell whether he "had an opportunity to process that, think about it, talk to his family about it, understand and weigh that, and realize the risks and benefits of *what a jury could do*, what a sentencing court could do, and have a response to that particular offer?" (Italics added.) Farwell replied, "Yes sir. I disagree." After the jurors were sworn, the court instructed them in Farwell's presence that the "defendant has pleaded not guilty to the charge or charges," and that he "is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt." "Unless the

14

[People's] evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty."

Unlike the express discussions on the subject of Farwell's change of plea, the circumstances preceding the stipulation are cryptic at best. After the People's first witness, defense counsel asked to approach the bench for an unreported discussion, apparently without Farwell's presence. Thereafter, the court simply read the stipulation into the record and informed the jury of its conclusive evidentiary effect. The court did not discuss the stipulation or its legal effect with Farwell. Nor did counsel confirm on the record that she had done so. The People urge us to infer that she did. (Citing *People v. Barrett* (2012) 54 Cal.4th 1081, 1105.) The way this stipulation was handled makes such an assumption unwarranted. When Farwell's counsel entered the stipulation, Farwell had rejected the plea offer and was in the midst of a jury trial. The trial court had refused to accept his no contest plea to count 2. Farwell would correctly have understood that he was accused of both crimes and that the prosecution bore the burden of proving him guilty. There is no affirmative evidence that Farwell understood his stipulation would conclusively establish all of the elements of the misdemeanor crime and make the guilty verdict a foregone conclusion. (See *Adams*, *supra*, 6 Cal.4th at p. 580, fn. 7.)[9]

In reaching this conclusion, we emphasize the general rule that stipulations are, in most instances, agreements between counsel that the facts stipulated to are

---

[9]     In *People v. Delgado* (2017) 2 Cal.5th 544, we recently declined to presume that counsel failed to discuss a stipulation concerning security measures with her client, noting that it was defendant's burden to show counsel's deficient performance. (*Id*. at p. 559, citing *People v. Pope* (1979) 23 Cal.3d 412, 425.) Farwell's claim is governed by a different standard: "[A] plea is valid if the record *affirmatively shows* that it is voluntary and intelligent under the totality of the circumstances." (*Howard*, *supra*, 1 Cal.4th at p. 1175, italics added.)

true.  Stipulations can serve the salutary goals of expediting and simplifying proceedings, thus reducing the chance for confusion and the consumption of time. As such, these technical and tactical decisions will most often repose in the sound discretion of counsel, subject to the court's acceptance.  (See *In re Horton* (1991) 54 Cal.3d 82, 94–95.)  Our decision here does not call that general proposition into question.  The rule requiring a constitutionally valid waiver of trial rights by a criminal defendant applies here because this particular kind of stipulation is tantamount to a guilty plea.

## III.  DISPOSITION

Because the record is insufficient to establish that Farwell entered a constitutionally valid waiver of his trial rights, the stipulation having that effect must be set aside.  (*Cross*, *supra*, 61 Cal.4th at p. 180.)  The Court of Appeal's judgment affirming Farwell's conviction on count 2 is reversed with directions that the matter be remanded to the trial court for further proceedings not inconsistent with this opinion.

**CORRIGAN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**COLLINS, J.***

_____

*        Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Farwell

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 241 Cal.App.4th 1313
**Rehearing Granted**

_____

**Opinion No.** S231009
**Date Filed:** June 21, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Paul A. Bacigalupo

_____

**Counsel:**

Jonathan B. Steiner, under appointment by the Supreme Court, and Jasmine Patel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen, Shawn McGahey Webb and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jonathan B. Steiner
California Appellate Project
520 South Grand Avenue, 4th Floor
Los Angeles, CA  90071
(213) 243-0300

Gary A. Lieberman
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 269-6010