Filed 8/26/20  P. v. Andrews CA4/2
Opinion after vacating opinion filed on 4/22/20

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>SOLOMON JAMES ANDREWS,<br><br>     Defendant and Appellant. | E070032<br><br>(Super.Ct.No. SWF1707340)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge.

Affirmed with directions.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for

Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters Chief

Assistant Attorneys General, Julie L. Garland, Attorney General, and Michael P. Pulos

and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant and appellant, Solomon James Andrew, was convicted by a jury of one count of possession of a slungshot (Pen. Code,[1] §22210), one count of carrying a concealed dirk or dagger (§21310), one count of possession of ammunition by a person prohibited from owning or possessing a firearm (§30305, subd. (a)), and one count of possession of methamphetamine (Health &Saf. Code, §11377, subd. (a)).

On appeal, defendant contends (1) the evidence presented against him was the product of an illegal search and the trial court erred in denying his motion to suppress, (2) insufficient evidence supported the conviction for possession of ammunition in violation of section 30305, subdivision (a), and (3) his conviction for possession of methamphetamine in violation of Health & Safety Code section 11377, subdivision (a) must be reversed due to ineffective assistance of counsel. ~~We affirm the judgment.~~ Additionally, in supplemental briefing, defendant contends two one-year sentence enhancements imposed pursuant to Penal Code section 667.5, subdivision (b) should be stricken in light of recent amendments to that statute. We remand the matter for resentencing with instructions to strike the two one-year sentence enhancements imposed pursuant to former section 667.5, subdivision (b) but otherwise affirm the judgment.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

## II.

### FACTS AND PROCEDURAL BACKGROUND

A. *Facts and Charges*

On May 9, 2017, a deputy sheriff and his partner were conducting a patrol in an unincorporated area of Riverside County. At approximately 2:25 p.m., the deputy drove into a retail store parking lot. His attention was drawn to defendant, who was standing outside the store. After the deputy made eye contact with defendant, defendant made several movements which the deputy interpreted as indicative of nervousness. The deputy exited his vehicle, approached defendant and initiated verbal contact. After a brief verbal exchange, the deputy handcuffed defendant and opened defendant's left hand, discovering a small plastic bag containing an off-white substance.

Upon further search of defendant's person, the deputy discovered a billiard ball wrapped and tied inside a bandana in defendant's pants pocket, a knife with a two-inch blade, a left-handed Callaway branded golf glove, a left-handed TaylorMade branded golf glove, a broken methamphetamine pipe, and pepper spray. In a nearby shopping cart, the deputy discovered a backpack covered by a gray sweatshirt. The backpack contained a gun case housing a replica gun loaded with four nine-millimeter rounds, packaging for a left-handed TaylorMade branded golf glove and a left-handed Callaway branded golf glove.

On June 1, 2017, the People filed an information charging defendant with possession of a slungshot (§22210;count 1), carrying of a concealed dirk or dagger (§ 21310; count 2), possession of ammunition by a person prohibited from owning or possessing a firearm (§30305, subd. (a); count 3), possession of methamphetamine (Health & Saf. Code, §11377, subd. (a); count 4), and possession of heroin (Health & Saf. Code, §11350, subd. (a); count 5).[2]

B. *Motion to Suppress*

Defendant moved to suppress the evidence (§ 1538.5), arguing that the deputy's actions on May 9, 2017, constituted an illegal search and seizure. At the hearing on defendant's suppression motion, the prosecution presented the testimony of the deputy sheriff.

The deputy had been a sworn peace officer in the State of California for 17 years; was a former member of the California Narcotics Officers Association; had received field training from two separate law enforcement agencies; had attended classes regarding the packaging, selling, distribution, and concealing of narcotics; and conducted thousands of interviews of drug addicts and convicted individuals regarding the use, sale, consumption and concealing of narcotics.

---

[2] The People subsequently moved to dismiss count 5 and the trial court granted that request.

At the time of his encounter with defendant, the deputy and his partner were conducting a "criminal saturation patrol," which he described as a patrol of areas within the County of Riverside specifically identified by the sheriff's office as having high incidents of crime. The deputy and his partner were in uniform and driving a marked patrol vehicle.

At around 2:25 p.m., the deputy drove into the parking lot of a retail store, and his attention was drawn to defendant because defendant appeared to be standing in front of the store without any movement or apparent purpose. After making eye contact with defendant, the deputy observed defendant's eyes widen and posture flare out, which the deputy interpreted as signs of nervousness. He then observed defendant quickly take several steps away from the store entrance towards a shopping cart, turn around and take several steps back towards the store entrance. The deputy parked the patrol vehicle approximately five to seven feet away from defendant, exited the vehicle and approached defendant. The deputy's partner also exited the vehicle, but remained with the vehicle.

The deputy initiated verbal contact by asking if defendant had seen anyone run into the store. Defendant responded with a "no" at which time the deputy saw defendant's hand move behind defendant's back as if to conceal something. The deputy pivoted towards defendant's backside and observed what appeared to be the tip of a plastic Ziploc bag protruding from between two fingers of defendant's clenched fist. The contents of the bag were not visible, but the deputy recognized that such bags were commonly used to conceal narcotics based upon his previous experience and training.

5

The deputy handcuffed defendant and immediately proceeded to open defendant's hand, revealing that the bag contained an off-white substance resembling methamphetamine. The deputy then immediately noticed the tail end of an orange bandana sticking out of defendant's left front pocket and what appeared to be a large bulge in that pocket. Upon seeing the bulge, he grabbed the bandana by the exposed tail end and felt considerable weight when doing so. He then removed the bandana and discovered that the bandana was wrapped and tied around a billiard ball, which he understood to resemble a "slungshot" based upon previous training in jailhouse weapons.

The deputy proceeded to search the rest of defendant's person resulting in the discovery of a second bag with an off-white substance resembling heroin or methamphetamine, a knife with a fixed two-inch blade, a single white Callaway branded golf glove, and a second white TaylorMade branded golf glove. The deputy testified that he considered his search to be a "[s]earch incident to arrest" after discovering the original plastic bag with a white-powdery substance in defendant's hand.

The deputy also discovered a backpack in a shopping cart approximately five feet away from defendant. He confirmed with the retail store manager and cashier on duty that no one had reported a missing backpack and proceeded to search the backpack. The backpack contained a gun case housing a replica gun loaded with four nine-millimeter rounds and a Callaway branded golf glove contained within the packaging for a TaylorMade golf glove. The motion to suppress was denied.

6

*C. Trial*

After denial of defendant's motion to suppress, the case proceeded to trial with the same deputy sheriff as the prosecution's primary witness.[3] At trial, the deputy clarified that the backpack had initially been hidden under a gray sweatshirt which appeared to be a size that could fit defendant. The deputy additionally noted that the TaylorMade golf glove packaging inside the backpack matched the golf glove discovered on defendant's person. The deputy clarified that all the golf gloves discovered both in the backpack and on defendant's person were left-handed gloves. The deputy never saw defendant in physical possession of the backpack and no identification or wallet was inside the backpack.

In closing argument, defendant's trial counsel conceded defendant's guilt as to count 4 but argued that the People had not met their burden to prove the charges in counts 1, 2 or 3.

---

[3] The prosecution also presented the testimony of the criminalist who performed the lab testing of the alleged narcotics. However, her testimony is not relevant to the challenges raised on appeal.

7

On August 9, 2017, the jury returned guilty verdicts on counts 1 through 4.  On February 23, 2018, the trial court imposed sentence[4] and on that same day, defendant filed a notice of appeal.

## III.

## DISCUSSION

A. *Denial of Defendant's Motion to Suppress Was Proper*

Defendant contends that denial of his motion to suppress under section 1538.5 was erroneous because the deputy sheriff's actions on May 9, 2017, constituted an arrest without probable cause.  We disagree.

On appeal from denial of a motion to suppress evidence on Fourth Amendment grounds, we review the historical facts as determined by the trial court for substantial evidence and apply the de novo standard of review in determining their consequences. (*People v. Mateljan* (2005) 129 Cal.App.4th 367, 373.)  Because the only evidence offered at the time of hearing on the motion to suppress was the testimony of the deputy, we independently consider the legal effect of such testimony.

1. *The Deputy's Actions Were Initially Justified as an Investigative Detention*

"'[N]ot all seizures of the person must be justified by probable cause to arrest for a

---

[4] Defendant was sentenced to the middle term of two years, doubled to four years due to a prior strike, on count 1; the middle term of two years for count 2, to run concurrently with count 1; the middle term of two years for count 3, also to run concurrently with count 1; one year for count 4, also to run concurrently with count 1; and two years as the result of two prison priors, to run consecutively to count 1.

8

crime. . . . [A]n officer who lacks probable cause to arrest can conduct a brief investigative detention when there is "'"some objective manifestation"'" that criminal activity is afoot and that the person to be stopped is engaged in that activity.'" (*People v. Celis* (2004) 33 Cal.4th 667, 674.) "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*Id.* at p. 894; see also *People v. Fews* (2018) 27 Cal.App.5th 553, 561.)

Here, the deputy testified that defendant was found in front of a store in an area known for high incidents of crime without any immediately apparent purpose; that defendant acted nervously upon making eye contact with the uniformed deputy; that defendant's "eyes widened" and his "posture flared out" upon seeing the officer; that defendant quickly moved a couple steps to his right towards a shopping cart before stopping and quickly taking a couple of steps back to his left. Upon approaching defendant, the deputy observed defendant attempt to conceal his left hand behind his back and that defendant's left hand appeared to be clenched with the tip of a small plastic bag protruding from defendant's fingers, which the deputy immediately recognized as a common way to conceal narcotics based upon the deputy's previous training, arrests and

9

interviews with thousands of individuals in his 17 years of law enforcement experience. These facts are sufficiently specific to support a reasonable suspicion that defendant was involved in criminal conduct justifying an investigative detention.

2. *The Use of Handcuffs Did Not Convert the Detention into a De Facto Arrest*

While defendant acknowledges that an investigative detention can be justified by a reasonable suspicion, he argues such standard does not apply here because the deputy's act of ordering defendant to put his hands behind his back, handcuffing defendant, and opening defendant's hand "goes beyond a detention" requiring probable cause. However, "[t]he fact that a defendant is handcuffed while being detained does not, by itself, transform a detention into an arrest." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 385; see also *People v. Celis*, *supra*, 33 Cal.4th at p. 674 ["stopping and handcuffing defendant, and making him sit on the ground for a few minutes was only an investigative detention"]; and *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1062 ["the handcuffing of a detained individual does not necessarily convert the detention into a de facto arrest"].) Here, the record indicates that defendant was in handcuffs only moments before the deputy discovered a controlled substance and prohibited weapons in defendant's possession—the point at which the deputy would have had probable cause to arrest defendant. The use of handcuffs during this brief period does not convert an otherwise lawful investigative detention into an unlawful arrest.

10

3. *Even Assuming Removal of the Narcotics from Defendant's Hand Was a Seizure Without Probable Cause, the Evidence Was Admissible Under the Inevitable Discovery Doctrine*

Defendant draws particular attention to the deputy's act of removing the partially visible plastic bag from defendant's hand, arguing that such an act constituted a warrantless search requiring probable cause. We need not address this specific question. Even assuming the deputy's act of opening defendant's hand required and was done without probable cause, we conclude that the evidence was admissible under the inevitable discovery doctrine.

"'The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police."' [Citations.]" (*People v. Cervantes* (2017) 11 Cal.App.5th 860, 872.) "'The prosecution bears the burden of proving by a preponderance of the evidence that evidence otherwise unlawfully obtained would have been inevitably discovered.'" (*Ibid.*)

At the suppression hearing, the deputy testified that after opening defendant's hand and discovering that the plastic bag appeared to contain methamphetamine, his attention was "immediately" drawn to an orange bandana and large bulge in defendant's pocket. Upon seeing the bulge, he grabbed the bandana by the exposed tail end and felt considerable weight when doing so. He then removed the bandana to discover a round,

hard object wrapped and tied within it, which the deputy believed constituted a slungshot in violation of section 22210. Nothing in the record suggests that the deputy's act of removing the bag from defendant's hand increased the visibility of the bulge in defendant's pocket or contributed to the discovery of the bulge.

The deputy's observation of the bulge in defendant's pocket would have independently justified reasonable steps to investigate the observed bulge to verify whether it was a weapon during an investigative detention. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111-112 [observation of bulge in jacket]; *Torres v. Purdy* (2008) 267 Fed.Appx. 590, 592 [observation of bulge in sweatshirt combined with nervous behavior justified pat-down search]; *People v. Miles* (1987) 196 Cal.App.3d 612, 618 [exaggerated bulge in suspects pocket justified weapons search even where officer admitted it could have been "'any heavy object'"].) Upon taking such reasonable steps here, the deputy confirmed that the bulge was in fact a prohibited weapon. At that point, the deputy would clearly have had probable cause to arrest defendant and search the remainder of defendant's person incident to arrest.

Under these circumstances, it is reasonable to conclude that even if the deputy had initially allowed defendant to keep his hand clenched around the plastic bag, the bag would eventually have been discovered during a search incident to arrest once the deputy discovered the alleged slungshot. Defendant would have us apply the exclusionary rule simply because the deputy here observed the tip of a plastic bag in defendant's hand mere moments before observing the equally visible bulge in defendant's pocket. This we

12

decline to do. We therefore find no error and no prejudice in the trial court's denial of defendant's motion to suppress.

### B. Sufficient Evidence Supports the Conviction for Possession of Ammunition

Defendant also contends that there is insufficient evidence to support the conviction for possession of ammunition in violation of section 30305, subdivision (a). Defendant's argument rests on two grounds: (1) that there is insufficient evidence to show he was in possession of the backpack where the ammunition was found; and (2) there is insufficient evidence to show that defendant had knowledge of the ammunition within the backpack. We disagree.

"In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*Ibid.*)

"Possession may be physical or constructive, and more than one person may possess the same contraband." (*People v. Williams* (2009) 170 Cal.App.4th 587, 625.) "'Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his

13

dominion and control, or to the joint dominion and control of the accused and another. . . . The elements of unlawful possession may be established by circumstantial evidence and any reasonable inference drawn from such evidence." (*People v. Busch* (2010) 187 Cal.App.4th 150, 162.)

With respect to the backpack, the deputy discovered the backpack in a shopping cart within a few feet of defendant; had previously seen defendant walk towards the shopping cart; and had discovered a gray sweatshirt which appeared to fit the defendant draped over the backpack. Further, the backpack contained opened packaging for a TaylorMade branded white golf glove which matched one of the white golf gloves found on defendant's person as well as a Callaway branded glove similar to a Callaway branded glove found on defendant's person. This is sufficient circumstantial evidence for a jury to reasonably infer that the backpack and its contents were immediately accessible to defendant and subject to his dominion and control.

Defendant also argues that the evidence was insufficient to show knowledge of the ammunition because the ammunition was located within a replica gun housed within a gun case within the backpack and there was no testimony showing that he had ever looked inside the gun case to examine its contents. This argument is unpersuasive. The deputy testified that the ammunition was not simply contained within the gun case, but specifically loaded into the cylinder of the replica gun. Thus, to the extent that the jury inferred the backpack and its contents belonged to defendant, the evidence was also sufficient for the jury to infer that the defendant handled the ammunition with knowledge

14

of its characteristics and purpose. Substantial evidence supports defendant's conviction for possession of ammunition in violation of section 30305, subdivision (a).

C. *Defense Counsel's Concession of Guilt in Closing Argument Did Not Amount to Ineffective Assistance of Counsel*

Finally, defendant contends his conviction for possession of methamphetamine in violation of Health & Safety Code, section 11377, subdivision (a) must be reversed due to ineffective assistance of counsel. Specifically, defendant argues that his counsel's concession of guilt in closing argument was tantamount to a guilty plea without his consent. We reject this conclusion.

1. *Defendant Has Not Met His Burden to Show Ineffective Assistance of Counsel*

"[T]he Sixth Amendment [to the United States Constitution] guarantees not only the right to the assistance of counsel but also the right to the *effective assistance* of counsel." (*People v. Hernandez* (2012) 53 Cal.4th 1095, 1103-1104.) In order to establish ineffective assistance, a defendant must show that counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms and that the defendant was prejudiced as a result. (*People v. Gurule* (2002) 28 Cal.4th 557, 611.)

The defendant bears the burden of establishing constitutionally inadequate assistance. (*People v. Carter* (2005) 36 Cal.4th 1114, 1189) "'A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of

15

professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. . . . If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.'" (*Ibid*.)

Here, defendant claims ineffective assistance because his trial counsel conceded guilt on count 4 (possession of methamphetamine) in closing argument. Defendant's showing on this point consists solely of citation to the reporter's transcript of closing argument. However, the California Supreme Court has repeatedly recognized that there may be valid strategic reasons for trial counsel to concede guilt during closing argument. (See *People v. Lucas* (1995) 12 Cal.4th 415, 446 ["it is settled that it is not necessarily incompetent for an attorney to concede his or her client's guilt of a particular offense"]; *People v. Hart* (1999) 20 Cal.4th 546, 631 [concession in closing argument did not amount to ineffective assistance where incriminating evidence was strong]; *People v. Gurule*, *supra*, 28 Cal.4th at p. 612 [counsel's concession can be good trial tactics where "evidence of guilt is quite strong"]; *People v. Gamache* (2010) 48 Cal.4th 347, 392 ["We have repeatedly recognized that sensible concessions are an acceptable and often necessary tactic."].)

Particularly here, where the evidence of defendant's possession of methamphetamine was strong, counsel may well have conceded guilt to maintain credibility with the jury in order to more effectively argue against counts in which the

16

evidence was far more circumstantial. (See *People v. Lopez* (2019) 31 Cal.App.5th, 55, 66-67 [concession of guilt not "outside the range of reasonable tactical decisions" where evidence largely undisputed]; *People v. Freeman* (1994) 8 Cal.4th 450, 498 [conceding various degrees of guilt can be important for "maintaining credibility before the jury"].) Thus, there are clearly circumstances in which defense counsel's concession of guilt would be objectively reasonable. It was defendant's burden to show otherwise. Absent any other showing, defendant has not met that burden and we presume that trial counsel's actions can be explained as a matter of sound trial tactics.

2. *Trial Counsel's Concession Was Not Equivalent to a Guilty Plea*

Defendant's additional argument that his counsel's concession of guilt was the equivalent of a guilty plea without defendant's consent pursuant to *McCoy v. Louisiana* (2018) 138 S. Ct. 1500 (*McCoy*) and *People v. Farwell* (2018) 5 Cal.5th 295 is unpersuasive.[5] Both cases are clearly distinguishable from the facts presented here.

In *McCoy*, defense counsel conceded defendant's guilt on the commission of three murders as a strategy to avoid a potential death sentence. (*McCoy*, *supra*, 138 S. Ct. at p. 1506.) The defendant did not agree with this strategy and adamantly objected to defense counsel's concession of guilt at multiple times throughout the proceeding. (*Ibid*.)

_____

[5] Defendant also relied upon *People v. Lopez* (2018) 28 Cal.App.5th 758 in his opening brief. However, a petition for rehearing of that case was granted on November 20, 2018. As such, the opinion had already been deemed vacated at the time defendant filed his opening brief and should not have been cited as authority. (Cal. Rules of Court, rule 8.268(d).) Further, as acknowledged in defendant's reply, the opinion has since been superseded by *People v. Lopez*, *supra*, 31 Cal.App.5th 55, which no longer supports defendant's argument here.

17

The Supreme Court concluded that under these circumstances, trial counsel's concession of defendant's guilt violated the Sixth Amendment. (*Id.* at p. 1505.) However, the Supreme Court did not view the issue as one of ineffective assistance, but rather as a violation of the defendant's personal autonomy in deciding the underlying objective of his defense. (*Id.* at pp. 1510-1512.) In explaining its reasoning, the Supreme Court specifically reaffirmed its prior holding in *Florida v. Nixon* (2004) 543 U.S. 175 that absent an objection from the defendant there is no blanket rule precluding trial counsel's concession of guilt as a strategy. (*McCoy*, *supra*, at pp. 1505, 1510.) Unlike *McCoy*, nothing in the record here suggests that defendant ever objected to his trial counsel's concession of guilt on count 4 during closing argument. Thus, there is no basis for application of *McCoy* to this case.

Defendant's reliance on *People v. Farwell*, *supra*, 5 Cal.5th 295 is also misplaced. There, the parties entered into a factual stipulation which encompassed all of the elements necessary to find the defendant guilty of a charged offense. (*Id.* at pp. 298-299.) The stipulation was read to the jury and the jury was specifically instructed that it must accept the stipulated facts as true. (*Ibid.*) The California Supreme Court concluded that such a stipulation was tantamount to a guilty plea requiring a knowing waiver of defendant's rights be placed on the record. (*Id.* at p. 308.) Unlike *Farwell*, the jury here was instructed to determine whether the People proved their case beyond a reasonable doubt by relying on the evidence. The jury was further instructed that counsel's argument was not evidence. Thus, counsel's concession of guilt here did not relieve the People of their

18

burden to produce evidence to establish defendant's guilt beyond a reasonable doubt and did not deprive the jury of its authority to find that the People failed to meet their burden. The exception recognized in *Farwell* is simply not comparable.

As such, we decline to interpret defense counsel's concession here as tantamount to a guilty plea made without defendant's consent. Such a conclusion would be contrary to the long line of authority recognizing that there are objectively reasonable, strategic reasons for defense counsel to concede guilt during the course of a criminal trial. While there may be situations in which such a concession violates Sixth Amendment principles, nothing in the record suggests such a situation exists here.

*D. The Matter is Remanded for Resentencing*

Following the issuance of our original opinion in this matter, defendant filed a motion to recall the remittitur on the basis that he is entitled to the benefit of a change in the law that became effective before the judgment in this case became final. We granted the motion, vacated our opinion and order the parties to submit supplemental briefing.

In supplemental briefing, defendant requests that his two one-year sentence enhancements imposed as the result of prior felony convictions involving terms in state prison be stricken in light of recent amendments to section 667.5, subdivision (b) embodied in Senate Bill No. 136. The amendment became effective January 1, 2020 and precludes the imposition of one-year sentence enhancements for prior prison terms unless the prior offense was sexually violent in nature. (§ 667.5, subdivision (b).) The People concede that the prior convictions underlying defendant's sentence enhancements here

19

would not quality under the amended statute.{RSB 4} Because the amendment is ameliorative in nature and defendant's conviction was not yet final at the time the amendment took effect, we agree that defendant's one-year sentence enhancements pursuant to section 667.5, subdivision (b) should be stricken.

However, the parties disagree as to whether the trial court should be permitted to fully resentence appellant in light of the stricken enhancements. Defendant argues we should not permit the trial court to do so and instead simply order the enhancements stricken and order the trial court to amend the abstract of judgment accordingly.{ASB 8-10} The People contend we should remand the matter for a full resentencing.{RSB 4} "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citations.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *see also People v. Edwards* (2011) 195 Cal.App.4th 1051, 1060 ["If correction of a sentencing error may affect the trial court's discretionary decision in determining an appropriate sentence, the remedy is to reverse and remand for resentencing"].) Accordingly, we will remand the matter for resentencing with directions that the trial court strike defendant's two one-year enhancements previously imposed pursuant to section 667.5, subdivision (b) and with further directions that upon resentencing any new term shall not exceed the original sentence imposed.

20

IV.

DISPOSITION

Defendant's sentence is vacated and the matter is remanded to allow the trial court to exercise its discretion in resentencing defendant on all counts.  Upon resentencing, the trial court is directed to strike defendant's two one-year sentence enhancements imposed pursuant to section 677.5, subdivision (b) and further instructed that any new sentence shall not impose a term longer than that imposed by defendant's original sentence.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____
J.

We concur:


RAMIREZ_____
P. J.


McKINSTER_____
J.