Filed 12/5/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045620 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS161881) |
| v. | |
| RAMON HERNANDEZ BERNAL, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Ramon Bernal, Jr. of 10 offenses, including residential burglary and assault with a deadly weapon. Because of his criminal record he was sentenced under the three strikes law to 85 years to life in prison. Defendant contends his constitutional rights were violated when his attorney conceded guilt on certain charges in closing argument. He further contends there is insufficient evidence to support two of his convictions, and that his trial counsel provided ineffective assistance. He also challenges his sentence. We find no error but will remand for resentencing so the trial court can exercise its discretion regarding prior conviction enhancements under Penal Code section 667, subdivision (a) (mandatory at the time of sentencing but now discretionary).

## I.   BACKGROUND

Defendant committed home and auto burglaries in Monterey County throughout 2016. In March of that year he broke into a house and stole jewelry, computers, wallets, a camera and other belongings, including children's piggy banks. Security cameras captured him on video ransacking the home.

In June, defendant broke into a car parked in a home driveway, which a neighbor witnessed and reported to 911. When defendant was arrested later that day, he had in his possession the items taken from the car, as well as other stolen property. Defendant was released on bail.

In August, a local business owner reported stolen from his car two briefcases containing computers, cash, and credit cards. Purchases were made with the credit cards, including one of over $500 at a nearby grocery store. Security video from the store showed defendant making that purchase.

In October, a man with his fiancée and newborn baby returned to their car in a supermarket parking lot to find defendant inside, rifling through the center console. The man grabbed defendant, told him to empty his pockets, then blocked his path when he tried to leave. Defendant took out a folding knife, displayed it and asked, "Do you want to do this?" Defendant then fled to his car and drove away. He was arrested a week later and again released on bail. Days later, a woman returned to her car after shopping and noticed several things missing that had been inside, including her work identification badge and a personal check. The badge and check were found in defendant's pocket when he was arrested later that day on a warrant from the August incident. He was again released on bail.

In December, defendant broke into two more cars: one in a shopping center parking lot and another outside a gym. From the car outside the gym he stole a wedding ring and other jewelry. Three days before Christmas, police obtained a warrant to search defendant's apartment for stolen property. When the warrant was executed, defendant was there with his girlfriend and two children—a six-year-old and a one-month-old. Along with jewelry, multiple driver's licenses, and numerous other stolen items, police found two methamphetamine pipes; one in a bathroom drawer showed signs of recent use.

The District Attorney charged defendant with residential burglary (Pen. Code, § 459); identity theft (Pen. Code, § 530.5, subd. (a)); assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)); three counts of auto burglary (Pen. Code, § 459); tampering with a vehicle (Veh. Code, § 10852); two counts of receiving stolen property (Pen. Code, § 496, subd. (a)); and child endangerment (Pen. Code, § 273a, subd. (b)). The information also alleged two prior serious felonies (Pen. Code, §§ 667, subd. (a)(1), 1170.12, subd. (c)(2)), prior prison terms (Pen. Code, § 667.5, subd. (b)), and committing new offenses while released on bail (Pen. Code, § 12022.1, subd. (b)). The case was tried to a jury and defendant was convicted of all charges. In a bifurcated phase, the court found true all special allegations.

Defendant moved at sentencing to strike the two prior strikes under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The trial court denied the motion, finding that "the defendant's record is simply too significant, and the unrelenting behavior that's present in this case is also too significant for the Court to say that this is outside the spirit of the Three Strikes Law." Because of the two prior strike offenses, defendant was sentenced to 85 years to life: 35 years to life for the residential burglary with two prior serious felony enhancements; a fully consecutive 35 years to life for the assault with a deadly weapon with two prior serious felony enhancements; plus an aggregate 15-year determinate term for the remaining counts.

## II.   DISCUSSION

### A. DEFENSE COUNSEL'S ARGUMENT DID NOT VIOLATE DEFENDANT'S RIGHTS

Defendant contends that his constitutional rights were violated when, during closing argument, his attorney conceded guilt and called him a "bad guy." Faced with the incriminating evidence presented at trial—which included video of defendant committing some of the crimes—counsel did not contest every charge when addressing the jury in closing argument. Regarding the auto burglary charge stemming from

3

defendant being caught inside a car in the supermarket parking lot, counsel said, "And Mr. Bernal was there[,] obviously. […] Breaking into the car, which clearly, by the way, he is, because he's inside the car. […] So not to give away that store, but that sounds like [on that count] you should come back with a guilty verdict[,] right?" Then—in arguing defendant was nonetheless *not* guilty of assault with a deadly weapon for displaying a knife during the same incident—counsel noted, "By the way, it's not that he's rightfully in the car. […] No. He's a bad guy at that point. He's a criminal. He's breaking into somebody's car. But at that point has he assaulted [the victim] is the question[,] right?" In his concluding argument to the jury, counsel stopped short of an outright concession but specifically asked for acquittal only on the assault with a deadly weapon and child endangerment counts: "We're asking you to return verdicts of not guilty as to Count 3, that's the 245; not guilty as to child endangering, and to all the other counts, the other eight counts I'm going to trust that you will review the evidence very carefully and render a just verdict."

Citing *McCoy v. Louisiana* (2018) 138 S.Ct. 1500, __ U.S. ___ (*McCoy*), defendant contends his trial attorney's method of argument violated his Sixth Amendment right to counsel. The Supreme Court decided in *McCoy* that an attorney may not concede guilt on a charge—even if that is a reasonable strategy given overwhelming prosecution evidence—when the defendant expresses that the objective of the defense is to maintain his or her complete innocence. (*McCoy*, at pp. 1508–1509.) *McCoy* does not assist defendant because the record here does not reflect a directive to counsel that defendant's objective at trial was to maintain innocence on all charges. There is no indication that defendant instructed counsel not to concede guilt on the relevant charges in closing argument, nor did he ask to replace appointed counsel because of disagreement over trial strategy. Defendant cites *People v. Eddy* (2019) 33 Cal.App.5th 472, 481, which found a Sixth Amendment violation under *McCoy* for a concession of guilt during closing argument. But there the defendant moved to replace

4

his appointed counsel post-verdict, and testimony during a hearing on that motion established that trial counsel was aware before closing argument that defendant disagreed with the strategy of conceding guilt. The record in this case is more like *Florida v. Nixon* (2004) 543 U.S. 175, 189, which found no constitutional violation with a silent record on whether the defendant disagreed with his attorney's concession of guilt, and with the first complaint about the concession coming only after trial. We agree with the reasoning in cases that have interpreted *McCoy* to require express disagreement with counsel for a claimed constitutional violation to have merit in this context. (See, e.g., *People v. Franks* (2019) 35 Cal.App.5th 883, 891; *People v. Burns* (2019) 38 Cal.App.5th 776, 784.)

Defendant also contends that counsel's closing argument was functionally equivalent to a guilty plea and therefore required his express consent and waiver of the right to confront witnesses and the right to avoid self-incrimination. He relies on *People v. Farwell* (2018) 5 Cal.5th 295, 299–300, which held that a factual stipulation encompassing all elements of a charged crime is tantamount to a guilty plea. In such a case the record must reflect the defendant voluntarily and intelligently waived the implicated constitutional rights. But *Farwell* dealt with a stipulation in trial which established the defendant drove a motor vehicle when his license was suspended and that he knew it was suspended—all the elements of the charged driving on a suspended license offense. Because the jury in that case was instructed to accept the stipulated facts, the stipulation "conclusively established the stipulated facts as true and completely relieved the prosecution of its burden of proof." (*Id.* at p. 300.)

There was no factual stipulation here. And arguments of counsel do not have the same effect. (See CALCRIM, No. 222 ["Nothing that the attorneys say is evidence."].) The jury found defendant guilty of the eight charges that were not contested in closing argument because the prosecution presented convincing evidence (including both video and eyewitness testimony) that defendant committed the crimes. Counsel did not stipulate to those facts, and the prosecution was required to present the evidence at trial.

5

In crafting a closing argument on behalf of his client, counsel played the hand he was dealt. The trial court was not required to obtain a waiver of defendant's constitutional rights in the situation presented here. (*People v. Lopez* (2019) 31 Cal.App.5th 55, 64–65.)

Absent a contrary directive or timely objection from the client, conceding guilt on the charges for which there was overwhelming evidence would be a reasonable strategy to garner credibility and cultivate a more favorable environment for the jury's consideration of defense arguments regarding the charges that *were* reasonably in dispute. This was not a "fail[ure] to function in any meaningful sense as the Government's adversary." (See *United States v. Cronic* (1984) 466 U.S. 648, 666.) To the contrary: it was a considered effort to achieve the best result possible for the client under difficult circumstances. That it was ultimately unsuccessful does not render it incompetent or unconstitutional.

## B. SUBSTANTIAL EVIDENCE SUPPORTS THE ASSAULT AND CHILD ENDANGERMENT COUNTS

Defendant contends there is insufficient evidence that he committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and child endangerment (Pen. Code, § 273a, subd. (a)). In assessing a claim of insufficient evidence, we determine whether the record contains substantial evidence on which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) The evidence must be viewed in the light most favorable to the judgment, and we presume the existence of every fact the jury could reasonably have deduced. (*Ibid*.) We do not reweigh the evidence or evaluate the credibility of witnesses. (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.)

Defendant was convicted of assault with a deadly weapon on the theory that he intentionally used a weapon in a way likely to result in force being applied on another person. (See CALCRIM No. 875.) The prosecution argued defendant committed the

6

crime by pulling out a knife when confronted by the owner of a car he was burglarizing. Defendant asserts there is insufficient evidence of both the intent element and the likely application of force element because he took out the knife only in response to the victim's demand that defendant empty his pockets, and the knife blade remained folded in the handle. Defendant points out that the victim testified the blade was not exposed and the victim's fiancée did not remember seeing a knife at all. But other evidence in the record supports the jury's finding that defendant used the knife in a manner likely to result in an application of force: A bystander testified she saw defendant holding the knife, with the blade exposed, about a foot away from the victim. The victim recounted that "the knife appeared when I wouldn't move out of his way… . [¶] So at that point when he brandished the knife I probably backed up about a foot or two." And defendant made a threat as he held up the knife, asking, "Do you want to do this?" From that evidence a jury could reasonably conclude that the car owner would likely have been touched with the knife had he not moved out of the way. (See *People v. Vorbach* (1984) 151 Cal.App.3d 425, 429 [display of a knife in a threatening manner is sufficient evidence of assault with a deadly weapon].)

Defendant was convicted of misdemeanor child endangerment (Pen. Code, § 273a, subd. (b)) based on the condition of the apartment he was living in with two young children when he was arrested. To prove misdemeanor child endangerment under Penal Code section 273a, subdivision (b), the prosecution was required to show defendant willfully permitted a child in his custody to be placed in a situation where the child's health may be endangered. The statute "encompasses a wide variety of situations and includes both direct and indirect conduct." (*People v. Burton* (2006) 143 Cal.App.4th 447, 454.) Defendant argues that merely because his apartment was dirty and cluttered is not an adequate basis for a child endangerment conviction, and he is likely right about that. But two methamphetamine pipes were also found in the apartment. The jury was entitled to infer from that evidence that methamphetamine had

7

recently been used in the home, even though police did not find narcotics there. We are satisfied that keeping and using methamphetamine in a home with a six-year-old and a one-month-old meets the standard of placing children in a situation where their health may be endangered. The evidence is sufficient to support the misdemeanor child endangerment conviction.

## C. DEFENSE COUNSEL WAS NOT CONSTITUTIONALLY INEFFECTIVE

Defendant contends he received ineffective assistance of counsel because his attorney failed to object to evidence of drug possession and disparaged him during closing argument. To prevail on a claim of ineffective assistance of counsel, defendant must show that his attorney's performance fell below prevailing professional norms and that the deficient performance affected the outcome of the trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 691–692.) We view counsel's performance deferentially: there is a strong presumption that counsel performed within the wide range of acceptable professional assistance, and defendant "must affirmatively show counsel's deficiency involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.)

Defendant complains that his attorney failed to object during trial to evidence of drug possession that was irrelevant and prejudicial. He notes two occasions where drug evidence came in without objection: a police officer who arrested defendant in June testified that cocaine and methamphetamine were found in defendant's car; and an officer who arrested him in October testified that he found methamphetamine in defendant's pants pocket. "Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [*citations*], failure to object seldom establishes counsel's incompetence." (*People v. Hayes* (1990) 52 Cal.3d 577, 621.) We decline to second guess the tactics here. Counsel might have decided that evidence suggesting defendant was under the influence of drugs during his

8

crime spree could ultimately be more beneficial than harmful by providing some explanation for the conduct. Even were we to find no possible strategic reason for not objecting to that drug evidence, we would also find the omissions unlikely to have affected the outcome of the trial. Evidence of methamphetamine use was properly admitted as relevant to the child endangerment charge, reducing the impact of evidence of drug possession on other occasions. And the overall strength of the prosecution case militates against a finding that the evidence of additional drug possession tipped the scales in any meaningful way.

Defendant also complains that his attorney's negative comments about him during closing argument while essentially conceding guilt on some charges constituted ineffective assistance of counsel. He takes issue with counsel telling the jury that when defendant was inside a victim's car, "He's a bad guy at that point. He's a criminal. He's breaking into somebody's car. But at that point has he assaulted [the victim] is the question[,] right?" Defendant cites authority holding that failure to give any closing argument is ineffective assistance of counsel and posits that conceding guilt on a charge while calling him a criminal was worse than making no argument at all. But as we have discussed, counsel's argument appears to have been a calculated strategy to concede the near inevitable outcome on certain charges in order to gain credibility with the jury and pursue acquittal on charges where the evidence was not as strong. Trial counsel was not constitutionally ineffective.

### D. NO SENTENCING ERROR OCCURRED

Defendant contends the trial court committed several sentencing errors: by denying his motion to strike the prior strike allegations; by imposing a consecutive term for assault with a deadly weapon in violation of the prohibition against multiple punishments for the same conduct; and because his prison sentence of 85 years to life constitutes cruel and unusual punishment.

9

### 1. Denial of *Romero* Motion

Defendant twice asked the trial court to strike his prior strikes; once before trial and again at sentencing. (See *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th 497.) Both times the court declined to do so. We review the denial of such a motion for abuse of discretion. (*People v. Williams* (1998) 17 Cal.4th 148, 162.) That deferential standard asks not whether the trial court's decision was *correct* in the sense that it is the same decision we would have made; rather, it asks whether the court's decision falls within the range of outcomes permitted by the controlling law. The controlling law in this situation is Penal Code section 1385, subdivision (a), which allows a trial court to strike or vacate a prior strike allegation or finding "in furtherance of justice." In making that determination, the court must consider whether the defendant falls outside the spirit of the three strikes law based on the nature and circumstances of the current and prior offenses, as well as the defendant's background, character, and prospects. (*People v Williams*, at p. 161.) But "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm. […] In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

The trial court did not abuse its discretion in determining that defendant's circumstances fall within the spirit of the three strikes law. He had two prior strike offenses, a 2010 conviction for residential burglary (Pen. Code, § 459); and a 2005 conviction for reckless evasion of police in a vehicle (Veh. Code, § 2800.2) committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)). He was convicted in this case of two more: residential burglary and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). He has five other prior convictions resulting in state prison sentences. He continued committing the current crimes with charges pending after being arrested and released on bail multiple times. And though defendant points to

10

mitigating evidence, such as his expression of remorse at sentencing and letters from family members attesting to his character, the presence of mitigating evidence is not enough to render the trial court's decision an abuse of discretion. The trial court acted within the applicable standards when it declined, based on defendant's "unrelenting" criminal behavior, to find that he falls outside the spirit of the three strikes law.

Defendant also argues that the trial court abused its discretion by failing to consider the option of striking at least one, even if not both, of his prior strikes. But we see no indication in the record that the trial court was unaware of its authority to strike a single prior or failed to exercise discretion in that regard. Rather, the record reflects that the trial court carefully considered the relevant circumstances and concluded it was not appropriate to depart from the sentencing norms established by the three strikes law.

### 2. Consecutive Sentence for Assault with a Deadly Weapon

Defendant asserts that the trial court erred by not applying Penal Code section 654 to stay the prison term for his assault with a deadly weapon conviction. Section 654 prohibits multiple punishments when a defendant is convicted of several crimes based on a single act. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) It also applies when an indivisible course of conduct violates more than one statute. (*People v. Phung* (2018) 25 Cal.App.5th 741, 759.) But even where the facts suggest an indivisible course of conduct, "[t]he initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) Whether a defendant had separate objectives is a factual determination made by the trial court at the time of sentencing.

11

(*People v. Braz* (1997) 57 Cal.App.4th 1, 10.)  We must defer to the trial court's finding of separate objectives so long as substantial evidence supports it.  (*Ibid*.)

Defendant contends his sentence on the assault with a deadly weapon count should have been stayed because sentence was imposed on the auto burglary count, and the two crimes had the same objective and arose from the same incident (breaking into a car in the supermarket parking lot).  The trial court found otherwise, indicating at sentencing that the burglary "is related to the assault, but it is still separate.  It's the intended original crime that day when the defendant entered the car in broad daylight.  He tried to steal items out of the car before he was stopped.  […]  This is what led to the assault."  That finding of separate objectives is supported by substantial evidence.  The evidence indicates defendant initially intended to steal items from a car when no one was there; then, after being caught by the owner, he formed a new objective:  to threaten him with a knife so that he could get away.  That is in contrast to *People v. Bauer* (1969) 1 Cal.3d 368, 378, relied on by defendant, where section 654 applied to stay a sentence for car theft when the defendant had committed a home invasion robbery then stole the victim's car from the garage to get away.  The defendant in that case could not be punished for both the initial violent crime and the ensuing car theft because the evidence showed he "formed the intent to steal the car during the robbery if not before it."  (*People v Bauer*, at p. 377.)  But here substantial evidence supports the trial court's determination that defendant's objective was solely to commit a theft offense, and that he formed the intent to get away by violence only in response to being apprehended by the car owner.

### 3.  Cruel and Unusual Punishment

Defendant also challenges his sentence on constitutional grounds.  He argues that a term of 85 years to life in prison—in essence a life sentence—is prohibited by the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the

California Constitution. He argues his sentence is so disproportionate to the crimes committed that it is unconstitutional.

The Eighth Amendment prohibits "a sentence that is grossly disproportionate to the severity of the crime." (*Rummel v. Estelle* (1980) 445 U.S. 263, 271.) But "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Id.* at p. 272.) "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77.) And while the "precise contours" of that principle are unclear (*id.* at p. 73), it *is* clear that a state may constitutionally punish a recidivist offender by imposing an extremely long prison sentence—even a life term—and even when the offenses are nonviolent. (See *Rummel v. Estelle*, at p. 274 [life sentence for fraudulent use of a credit card to obtain $80, forging a check for $28.36, and obtaining $120.75 by false pretenses]; *Ewing v. California* (2003) 538 U.S. 11, 18 [25 years to life for stealing golf clubs]; *Lockyer v. Andrade*, at p. 77 [50 years to life for stealing video tapes].) Based on that precedent, we conclude defendant's sentence does not violate the Eighth Amendment.

The California Constitution similarly prohibits cruel or unusual punishment. (Cal. Const., art. 1, sec. 17.) A punishment is cruel or unusual only if it "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) More specifically, imposition of a life term for even a nonviolent felony committed by a defendant with a history of serious or violent felony convictions does not violate the California Constitution. (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 363–364.) And defendant, with his history of serious or violent convictions, was convicted here of another violent felony (assault with a deadly weapon). We acknowledge the severity of defendant's sentence. But it is not based solely on the 10 offenses in this case; it is also based on a lengthy criminal record which brought him within the designedly harsh prison

terms mandated by the three strikes law.  The power to define punishment for crimes is a legislative function, so we proceed with deference when there is a constitutional challenge to the length of a prison term.  (*People v. Baker* (2018) 20 Cal.App.5th 711, 729.)  As we find no constitutional violation here, we will not interfere with the punishment the Legislature has prescribed.

### E. AMENDMENT TO PENAL CODE SECTION 1385 REQUIRES REMAND

When defendant was sentenced in 2018, the enhancements the trial court imposed under Penal Code section 667, subdivision (a) for prior serious felony convictions were mandatory.  Later that year, the Legislature passed Senate Bill 1393 which, effective January 1, 2019, amended Penal Code section 1385 to allow a trial court to strike Penal Code section 667 enhancements in furtherance of justice.  A statutory amendment potentially reducing defendant's punishment applies retroactively to this nonfinal judgment of conviction.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972.)  We will therefore remand the matter to allow the trial court to exercise its newly conferred discretion and decide whether to strike the Penal Code section 667, subdivision (a) sentencing enhancements.

### III.   DISPOSITION

The judgment is reversed and the matter is remanded to allow the trial court to exercise its discretion regarding the Penal Code section 667, subdivision (a) prior conviction enhancements.  If the trial court decides the enhancements should be imposed, it shall reinstate defendant's original sentence; if the court decides the enhancements should be stricken or dismissed, it shall resentence defendant accordingly and transmit an amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____
Grover, J.

**WE CONCUR:**


_____
Mihara, Acting, P. J.


_____
Danner, J.

**H045620 -** *The People v. Bernal*

| | |
|---|---|
| Trial Court: | Monterey County Superior Court, Case No.: SS161881 |
| Trial Judge: | Hon. Andrew G. Liu |
| Attorneys for Plaintiff/Respondent: The People | XAVIER BECERRA<br>  Attorney General of California<br>GERALD A. ENGLER<br>  Chief Assistant Attorney General<br>JEFFREY M. LAURENCE<br>  Senior Assistant Attorney General<br>ERIC D. SHARE<br>  Supervising Deputy Attorney General<br>ALISHA M. CARLILE<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant: Ramon Hernandez Bernal, Jr. | Frank J. McCabe |