COLLINS, J.
*453 *57 INTRODUCTION
While driving under the influence of alcohol, appellant Lauro Lopez made a left turn in front of an oncoming motorcycle, hitting and killing the rider. A *58 jury convicted appellant of second degree murder and felony hit and run driving resulting in death or serious injury.
Appellant challenges his conviction in several ways. First, he argues that the trial court erred by admitting evidence of the advisement he received after a prior conviction for driving under the influence. Second, appellant raises several claims of error related to the jury instructions. Third, he contends his conviction on both counts must be overturned due to his counsel's concession at trial that appellant committed the hit and run, coupled with the absence of affirmative evidence that he knowingly waived his constitutional trial rights. Finally, he asserts cumulative error and sentencing error.
In our previous opinion, we reversed the conviction on the hit and run charge based on appellant's argument regarding his counsel's concession. We otherwise affirmed. We then granted respondent's petition for rehearing and received additional briefing on the issue of the concession. Upon reexamination of this issue, we conclude defense counsel's statements during argument were not tantamount to a guilty plea. We therefore affirm the judgment in its entirety.
PROCEDURAL HISTORY
The Los Angeles County District Attorney charged appellant in an information with one count of second degree murder ( Pen. Code, § 187, subd. (a) ; count one)[1] and one count of felony hit and run driving resulting in death or serious injury to another person ( Veh. Code, § 20001, subd. (b)(2) ; count two). Appellant pled not guilty to both counts and the matter proceeded to jury trial.
The jury found appellant guilty on both counts. The court sentenced appellant to 15 years to life on the murder charge and three years on the hit and run charge, to run consecutively.
Appellant timely appealed. As we have indicated, after we issued our initial opinion, we granted respondent's petition for rehearing on the issue of defense counsel's concession during argument.
FACTUAL BACKGROUND
The following evidence was adduced at trial.
*59 I. Prosecution Evidence
A. 2013 drunk driving conviction
Appellant was previously arrested for driving under the influence on January 7, 2013. He pled no contest to driving under the influence with a blood alcohol content of .08 percent or higher in violation of Vehicle Code section 23152, subdivision (b), and admitted as part of his plea that his blood alcohol level was actually .20 percent or higher. Before entering his plea, appellant signed a written advisement, which was also read to him by a Spanish interpreter. It included the following Watson[2] *454 advisement: "I understand that being under the influence of alcohol or drugs or both impairs my ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs or both. If I continue to drive while under the influence of alcohol or drugs or both, and as a result of my driving someone is killed, I can be charged with murder." In addition, during the plea hearing, the judge repeated the Watson advisement.
The terms of appellant's plea required him to complete a nine-month alcohol education program and a Mothers Against Drunk Driving (MADD) victim impact program, and barred him from driving without a valid driver's license or with any measurable amount of alcohol in his system. Appellant was placed on probation for three years.
Pursuant to the terms of his plea, appellant completed a nine-month alcohol program starting in February 2013. The program, given in Spanish, included 23 group sessions, six alcoholic education sessions, 10 interviews, and 19 Alcoholics Anonymous meetings. Upon completion, appellant filled out an exit form stating that he would not drink and drive.
In November 2013, appellant also attended a victim impact panel, an educational program for driving under the influence (DUI) offenders. He registered for and completed the course in English. As part of the program, the administrator testified that she discussed the Watson advisement with the participants and projected the text on a big screen. She would customarily tell the story of another class participant who attended the class twice and later caused an accident that killed two people.
B. 2015 accident
On October 13, 2015 at approximately 7:15 p.m., appellant approached the intersection of Soto Street and 57th Street in Huntington Park. He was *60 driving his white pickup truck and his 29-year-old son was in the passenger seat. Appellant made a left turn onto 57th Street in front of an oncoming motorcycle. He struck the motorcycle, knocking its rider to the ground. Appellant then drove away from the scene.
A bystander called 911, reporting that "a guy came, took a left. And nailed a woman or man on a motorcycle." He described the vehicle as a white truck and told the operator where the truck was heading. The 911 call was played for the jury at trial.
Detective Garey Staal of the Huntington Park Police Department (HPPD) testified that he and his partner saw the motorcycle driving on Soto Street before the accident. The motorcycle was travelling a "little faster than the normal traffic but ... nothing that was concerning as far as speed." They came upon the scene of the accident and saw the same motorcycle on the ground. Detective Staal ran toward the victim on the ground and began performing CPR, assisted by others at the scene. Paramedics arrived less than five minutes later. The victim was transported to the hospital and died shortly thereafter from his injuries.
Staal and his partner gathered a description of the suspect vehicle and its direction of travel from witnesses at the scene; they broadcast that information over their police radio. The detectives also noticed a license plate lying in the street, which appeared to be the front license plate from the suspect vehicle. Staal's partner wrote down the license plate number and gave it to police dispatch; dispatch advised him that the vehicle with that plate number was registered to appellant.
A short time later, a police officer who had heard the collision and then heard *455 about the suspect over the police radio spotted appellant's truck parked in a nearby business parking lot. As the officer walked over to the truck, he noticed appellant and his son standing in a yard next to the vehicle. The officer approached and asked in Spanish if either of them was driving the pickup truck. The officer testified at trial that in response, appellant pointed to his son, who shook his head no. The officer then called for assistance.
HPPD officer Martin Magallanes arrived a few moments later. He noted that the front license plate on appellant's truck was missing and the rear plate matched the number from the plate at the scene. He spoke to appellant in Spanish and testified that he could smell alcohol on appellant's breath. Appellant acknowledged to Magallanes that he had consumed three 24-ounce beers between 5:00 and 6:00 p.m. He stated he did not feel the effects of the alcohol, but Magallanes noticed appellant swaying. Appellant also admitted he had been driving. He told Magallanes that his truck did not have any mechanical problems and he knew he had collided with a motorcycle. He did not ask about the condition of the rider.
*61 Magallanes administered a field sobriety test to appellant, which indicated appellant was impaired. Appellant was also given two breath tests, one at 8:10 and one at 8:12 p.m.; both showed his blood alcohol content was 0.14 percent. That result was confirmed by a blood draw taken at 8:30 p.m.[3] Appellant was arrested.
Magallanes interviewed appellant in jail that evening around 10:00 p.m. Appellant agreed he had "too many beers" and knew driving after drinking was a crime. He said he had one beer at work, then went to the liquor store to get beer, drove home, and drank "two big Modelos" at home. He told Magallanes that he was not planning to leave his house that night, but he decided to drive his son to a friend's house to see about a job. At the time of the accident, he saw the motorcycle approaching but thought he would be able to make the left turn safely before the collision. He did not see the motorcyclist after the crash. Appellant then left the scene because he was scared he would get arrested because he had been drinking. His son told him to remain at the scene. Appellant also stated he was not planning to report the collision that night because he was intoxicated.
HPPD detective Osvaldo Cervantes interviewed appellant on October 14, 2015. Excerpts from the video of that interview were played for the jury. Appellant reiterated that he drank three 24-ounce Modelo beers, finishing about an hour before the accident. When asked if he thought he was drunk, appellant responded, "Well, on the one hand, yes, but on the other hand I think - yes, I was a little. I'm not going to say no. But ... my kid was going ... and I thought it easier that I take the truck rather than him." The detectives also asked why appellant drove if he knew he was drunk. He responded, "that was my mistake." He said the admonition he received with his prior conviction was that "I wasn't to drive again with alcohol" and knew he couldn't drive for three years. He also knew he was still on probation from his prior conviction.
Appellant told the detectives that he was "going to make a left turn" and claimed he saw the other driver "coming at a high velocity on his motorcycle. But, there were no cars. He came hard." Appellant thought *456 he was going to be able to turn in front of the motorcycle, but they collided. His son said "Wait Dad!" before the turn, but appellant went ahead because he thought he could beat the motorcycle. After he felt the crash, appellant reversed his truck to move away from the accident and then left the scene because he was scared. He claimed he did not see the condition of the motorcyclist and did not see him on the ground. His son wanted to get out and check on the victim, but appellant did not stop. *62 Appellant admitted to the detectives that he thought the victim was hurt and he "came out of it badly." Before they advised appellant that the victim had died, the detectives asked appellant if he wanted to know how serious the victim's injuries were. Appellant responded, "If you want to tell me." He later stated that he was sorry but that it was also the victim's fault because he (the victim) was driving so fast.
II. Defense evidence
The defense did not call any witnesses and appellant did not testify.
DISCUSSION
I.-II.**
III. Defense Counsel's Concession of Hit and Run
During his opening statement and closing argument, defense counsel conceded appellant's guilt as to the second count of felony hit and run, focusing instead on the murder count. Appellant argues that his counsel's concession was tantamount to a guilty plea on that count. Further, because the record is silent as to whether appellant knowingly waived his right to trial on the hit and run, he contends the absence of a valid waiver requires reversal. He asserts that this error infected his murder conviction as well. We conclude counsel's concession was not the equivalent of a guilty plea; therefore, no waiver was required.
A. Factual background
Defense counsel's opening statement included an unequivocal concession on the hit and run count. He stated that appellant "caused the accident. No dispute. And then he drove away." A few moments later, he conceded, "As to the hit and run, he's guilty of it; I'll say that again at the end. There are no games being played here. ... But he's not guilty of murder." The remainder of the defense opening statement focused on the murder charge.
Similarly, in closing argument, defense counsel focused solely on the murder charge, stating that as to the hit and run charge, "I've never disputed it. He's guilty of it; he should be punished for it." In her closing, the prosecutor noted that she would not "touch on the second count, the hit and run; I think that's very obvious that he is guilty of that count."
*63 B. Effect on hit and run conviction
"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights-the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers-and solicit a personal waiver of each." ( People v. Cross (2015) 61 Cal.4th 164, 170, 187 Cal.Rptr.3d 139, 347 P.3d 1130.) Accordingly, in the event of a guilty plea or other conduct tantamount to a plea, "the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights." ( *457 People v. Farwell (2018) 5 Cal.5th 295, 300, 234 Cal.Rptr.3d 434, 419 P.3d 913 ( Farwell ).)
The starting point for our analysis, therefore, is whether defense counsel's concession of guilt during argument on the hit and run charge was tantamount to a guilty plea. If not, there was no error. If so, the concession was permissible only if based on a knowing and informed waiver by appellant of his right to trial on that count. (See McCoy v. Louisiana (2018) --- U.S. ----, 138 S.Ct. 1500, 1508, 200 L.Ed.2d 821 ( McCoy ).)[6]
Respondent contends we are bound by our Supreme Court's conclusion on a similar partial concession of guilt in People v. Cain (1995) 10 Cal.4th 1, 39, 40 Cal.Rptr.2d 481, 892 P.2d 1224 ( Cain ), overruled on other grounds in People v. Moon (2005) 37 Cal.4th 1, 17, 32 Cal.Rptr.3d 894, 117 P.3d 591. We agree. In Cain , defense counsel told the jury during argument that the defendant was guilty of burglary and multiple felony murder. ( Id . at pp. 29-30, 40 Cal.Rptr.2d 481, 892 P.2d 1224.) On appeal, the defendant argued that these statements were the equivalent of a guilty plea on those charges, and therefore that the trial court was required to obtain a plea waiver. ( Id . at p. 30, 40 Cal.Rptr.2d 481, 892 P.2d 1224.) The court rejected this argument, holding that "trial counsel's decision not to contest, and even expressly to concede, guilt on one or more charges at the guilt phase of a capital trial is not tantamount to a guilty plea." ( Ibid . ) The Supreme Court has reiterated this holding in numerous cases. (See People v. Lucas (1995) 12 Cal.4th 415, 446, 48 Cal.Rptr.2d 525, 907 P.2d 373 ["It is [ ] settled that counsel's concession of guilt on one or more charges at the guilt phase of a capital trial is not the equivalent of a guilty plea, requiring defendant's express waiver."]; People v. Freeman (1994) 8 Cal.4th 450, 497, 34 Cal.Rptr.2d 558, 882 P.2d 249 ;
*64 People v. Griffin (1988) 46 Cal.3d 1011, 1029, 251 Cal.Rptr. 643, 761 P.2d 103, disapproved on other grounds by People v. Riccardi (2012), 54 Cal.4th 758, 824, fn. 32, 144 Cal.Rptr.3d 84, 281 P.3d 1 People v. Hendricks (1987) 43 Cal.3d 584, 592-594, 238 Cal.Rptr. 66, 737 P.2d 1350 ( Hendricks ).)[7]
Appellant contends his counsel's concession was the equivalent of a guilty plea on count two, arguing that the concession effectively admitted all of the elements of the hit and run and relieved the prosecution of its burden of proof on that count. He cites Farwell, supra , 5 Cal.5th 295, 234 Cal.Rptr.3d 434, 419 P.3d 913 in support of this proposition. We find Farwell distinguishable. There, the defendant was charged with gross vehicular manslaughter and misdemeanor driving with a suspended license. ( Id . at p. 298, 234 Cal.Rptr.3d 434, 419 P.3d 913.) During trial, the parties entered into a stipulation admitting all the elements of the misdemeanor charge; the court later instructed the jury that it must accept the stipulated facts as true. ( *458 Id. at pp. 298-299, 234 Cal.Rptr.3d 434, 419 P.3d 913.) The court did not advise the defendant "of the constitutional rights implicated by a guilty plea or the stipulation. Nor did it solicit a personal waiver of those rights." ( Id . at p. 299, 234 Cal.Rptr.3d 434, 419 P.3d 913.) Crucially, the Supreme Court found that a "stipulation that admits all of the elements of a charged crime necessary for a conviction is tantamount to a guilty plea." ( Ibid . ) The court reasoned that Farwell's "stipulation conclusively established the stipulated facts as true and completely relieved the prosecution of its burden of proof on count 2. While the jury was still required to return a verdict on that count, its limited function did not amount to a jury trial in the constitutional sense." ( Id . at p. 300, 234 Cal.Rptr.3d 434, 419 P.3d 913.) Thus, because the stipulation conclusively established all of the elements of the misdemeanor, it made "the guilty verdict a foregone conclusion." ( Id . at pp. 307-308, 234 Cal.Rptr.3d 434, 419 P.3d 913.)
Conversely, here, there was no stipulation admitting the elements of the hit and run as an evidentiary matter. Instead, the jury was instructed that the prosecution had to prove guilt on all counts beyond a reasonable doubt and that statements by counsel were not evidence. Thus, the prosecution was still required to present "competent, admissible evidence establishing the essential elements" of each charge. ( Florida v. Nixon (2004) 543 U.S. 175, 188, 125 S.Ct. 551, 160 L.Ed.2d 565.) The prosecutor's remark during closing argument that appellant's guilt on the hit and run was "obvious" and decision not to argue the evidence on that count did not change the burden of proof, nor did it limit the scope of the jury's role.
Appellant cites no authority extending the rationale of Farwell to a case such as this one, concerning a concession made during closing argument.
*65 Indeed, courts have repeatedly distinguished between such circumstances and a guilty plea or its equivalent. (See Florida v. Nixon, supra, 543 U.S. at p. 188, 125 S.Ct. 551 [holding concession not tantamount to guilty plea because defendant "retained the rights accorded a defendant in a criminal trial"]; Boykin v. Alabama (1969) 395 U.S. 238, 242-243, and fn. 4, 89 S.Ct. 1709, 23 L.Ed.2d 274 [guilty plea is "more than a confession which admits that the accused did various acts," it is a "stipulation that no proof by the prosecution need be advanced"]; cf. Brookhart v. Janis (1966) 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314 [waiver required where defense agreed that the prosecution need only prove a "prima facie case," that the case would not be contested, and the defendant would not cross-examine witnesses].) As the court explained in Hendricks, supra, 43 Cal.3d 584, 238 Cal.Rptr. 66, 737 P.2d 1350, the rationale of the waiver requirement " 'is to "assure that the record demonstrably discloses the defendant knows of and voluntarily waives the three specified rights ... surrendered by a guilty plea." [Citations.] Th[is] mandate ... applies only to pleas of guilty and situations tantamount to a plea of guilty. [Citation.] Nothing in our decisions ... indicates that the principles expressed therein were intended to apply to jury trials, even where the evidence of guilt is overwhelming. When a defendant undergoes a jury trial any competent defense counsel will inform him of his right to call witnesses on his own behalf, of his right to testify or not to testify, and, in the absence of unusual circumstances, will cross-examine the witnesses for the prosecution.' " ( Id . at p. 592, 238 Cal.Rptr. 66, 737 P.2d 1350.) As such, the waiver requirement "applies only when the defendant agrees to a submission procedure, such as a guilty plea or a submission on the preliminary hearing transcript, by virtue of which he surrenders one or more of *459 the three specified rights. Second, there is no such surrender when the defendant undergoes - and thereby exercises his right to - a jury trial and has the opportunity to cross-examine the witnesses against him and to refuse to incriminate himself." ( Id . at pp. 592-593, 238 Cal.Rptr. 66, 737 P.2d 1350.) Here, the record reflects no such surrender of appellant's rights; thus, we cannot conclude counsel's concession was the equivalent of a guilty plea.
Appellant also argues that this case should be guided by McCoy, supra, 138 S.Ct. 1500. In McCoy , defense counsel informed defendant of his plan to concede guilt on the commission of three murders in an attempt to avoid a death sentence for defendant. ( McCoy, supra , 138 S.Ct. at p. 1506.) The defendant insisted he did not commit the murders and adamantly objected to any admission of guilt. ( Ibid . ) During his opening statement and closing argument, over defendant's objection, defense counsel told the jury the evidence was "unambiguous," that defendant "committed three murders." ( Id . at p 1507.)
The Supreme Court concluded that "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission." ( McCoy , supra , 138 S.Ct. at p. 1510.) As *66 the McCoy court noted, "[s]ome decisions ... are reserved for the client-notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." ( Id . at 1508.)
Here, unlike in McCoy , there is no evidence that appellant raised any objection to his counsel's decision to concede guilt on the hit and run charge. Nevertheless, appellant urges us to apply McCoy's analysis of a defendant's constitutional right to control the objectives of his or her own defense to cases, such as this one, where the defendant has not expressly raised an objection. We conclude such an extension is not supported by the controlling authority. In fact, the court in McCoy explicitly distinguished Florida v. Nixon , supra , 543 U.S. at p. 186, 125 S.Ct. 551, in which defense counsel several times explained to the defendant a proposed concession strategy, but the defendant was unresponsive. The Nixon court held that "when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, '[no] blanket rule demand[s] the defendant's explicit consent' to implementation of that strategy." ( McCoy, supra , 138 S.Ct. at p. 1505, quoting Nixon, supra , 543 U.S. at p. 192, 125 S.Ct. 551.)
This analysis is consistent with our Supreme Court's holding in Cain, supra , 10 Cal.4th at p. 30, 40 Cal.Rptr.2d 481, 892 P.2d 1224 and similar cases. In Cain , the court held it was "not the trial court's duty to inquire whether the defendant agrees with his counsel's decision to make a concession, at least where, as here, there is no explicit indication the defendant disagrees with his attorney's tactical approach to presenting the defense." ( Ibid ., citing People v. Freeman , supra , 8 Cal.4th at p. 497, 34 Cal.Rptr.2d 558, 882 P.2d 249 ; People v. Griffin, supra , 46 Cal.3d at p. 1029, 251 Cal.Rptr. 643, 761 P.2d 103 ; People v. Hendricks, supra , 43 Cal.3d at 593-594, 238 Cal.Rptr. 66, 737 P.2d 1350 ; see also People v. Frierson (1985) 39 Cal.3d 803, 818, fn. 8, 218 Cal.Rptr. 73, 705 P.2d 396 ["nothing in this opinion is intended to suggest that - in the absence of such an express conflict [between defendant and counsel] - a court is required to obtain an on-the-record, personal waiver from the defendant"].) In sum, we have found no authority, nor has appellant cited any, allowing extension of McCoy's holding to a situation where the defendant does not expressly disagree with a decision relating *460 to his right to control the objective of his defense.
Finally, to the extent appellant contends his counsel's concessions constituted ineffective assistance of counsel, we are not persuaded. The court in Cain squarely rejected this argument, noting, " '[t]o the extent defendant is arguing that it is necessarily incompetence for an attorney to concede his or her client's guilt of murder [or burglary and murder as in this case], the law is otherwise.' [Citation.] Furthermore, as pointed out above, the record does not demonstrate counsel ignored 'any express wish on defendant's part to present an active defense' with regard to either the felony-murder or burglary *67 counts." ( Cain, supra , 10 Cal.4th at pp. 30-31, 40 Cal.Rptr.2d 481, 892 P.2d 1224.) In addition, appellant cannot show that counsel's decision was outside the range of reasonable tactical decisions, particularly given the largely undisputed evidence as to the hit and run charge and the seriousness of the murder charge. (See, e.g., People v. Freeman, supra, 8 Cal.4th at p. 498, 34 Cal.Rptr.2d 558, 882 P.2d 249 ["Recognizing the importance of maintaining credibility before the jury, we have repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt."].) This result is unchanged by appellant's claim that the decision was unreasonable because of the "obvious 'implied malice' implications" of the concession. We have already rejected the suggestion that the jury could have found implied malice to support the murder charge based on the same post-accident conduct supporting the hit and run charge.
Therefore, we affirm the conviction on the hit and run charge.[8]
IV. Section 654 Error***
V. Cumulative Error
Appellant also contends that the cumulative effect of the errors he has identified requires reversal of the murder conviction. Because we found no errors, we reject this claim.
DISPOSITION
The judgment is affirmed.
We concur:
MANELLA, P. J.
MICON, J.†

All further statutory references herein are to the Penal Code unless otherwise indicated.

People v. Watson (1981) 30 Cal.3d 290, 179 Cal.Rptr. 43, 637 P.2d 279 (Watson ).

A prosecution expert opined that any driver would be impaired at the level of .08 percent or above. Given a hypothetical scenario matching the facts of the case, he also opined that the driver's blood alcohol content at the time of the accident would be between 0.14 and 0.16 percent.

See footnote *, ante .

Both McCoy and Farwell , supra, 5 Cal.5th 295, 234 Cal.Rptr.3d 434, 419 P.3d 913 were published after the parties had completed briefing in this appeal. We granted appellant's request to allow the parties to submit supplemental letter briefs addressing McCoy . We also requested and received supplemental briefing addressing Farwell . The parties provided additional discussion of both cases in their briefing on respondent's request for rehearing.

Appellant notes that these cases all are capital cases. While the relevant holdings are therefore in the context of the guilt phase of a capital trial, we see no basis to limit the holding to capital cases, nor has appellant suggested any. Appellant also asserts that these cases are factually and legally distinguishable, but has not identified any material distinguishing features.

In light of this conclusion, we need not reach appellant's argument that his counsel's concession of guilt as to the hit and run charge requires reversal of the murder conviction.

See footnote *, ante .

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.