Filed 12/3/21  P. v. Thompson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C088523 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE010736) |
| v. | |
| RAFT LEE THOMPSON, | |
| Defendant and Appellant. | |

Defendant Raft Lee Thompson hit a man with a U-Haul truck multiple times, then drove the truck into a woman who was holding her baby, injuring both the man and the woman.  A jury found defendant guilty of attempted murder, felony child endangerment, and multiple counts of assault with a deadly weapon.  The trial court sentenced him to 16 years plus 75 years to life in prison.  Defendant appeals, arguing his counsel violated his Sixth Amendment rights by conceding guilt to a lesser included offense during closing arguments.  We affirm the judgment.

1

# FACTUAL AND PROCEDURAL HISTORY

## I

### *The Facts*

After spending the night with Misty W. and several friends at Misty W.'s aunt's house, Ronald K. drove Misty W. to pick up her infant daughter from a relative's house the next morning. They picked up Misty W.'s child and then drove back to her aunt's house. When they arrived, defendant had parked a U-Haul truck out front. Defendant told Misty W. he was changing the locks and "getting all [Misty W.'s aunt's] shit out of" the house. He told Misty W. that if she did not tell him where her aunt was, "then we're going to have a problem."

Ronald K. went inside the house, where he noticed the window in the house was broken and the dog was missing. He walked outside, where defendant was seated inside the parked U-Haul. Ronald K. knocked on the U-Haul's window, but when defendant did not respond and began to pull the U-Haul away, Ronald K. walked towards his car so he could go out looking for the missing dog. As Ronald K. stood inside the "V" of the driver's side door of his car, defendant floored the U-Haul's accelerator and smashed into Ronald K., pinning him against his car. Defendant backed up and hit Ronald K. four more times. Ronald K. was able to get into the car, which defendant continued to back up and hit several more times. Misty W. came out of the house with her baby. Defendant drove the U-Haul towards Misty W., who threw her baby into the grass to avoid the path of the U-Haul. Defendant pinned Misty W. against the garage, backed up, and drove into Ronald K.'s car again. The truck got stuck and the police arrived shortly thereafter. When Misty W. asked defendant why he tried to hit her and her baby, he responded, "I wanted to kill you guys." Ronald K. and Misty W. were both treated for injuries.

## II

### *The Trial*

Defense counsel made a brief opening statement, asking the jury "to find [defendant] not guilty of the seven charges as he didn't commit actual crimes on June 2nd." After the prosecution began to present its case, defendant asked to make a *Marsden* motion.[1] At the *Marsden* hearing, defendant said he was unhappy that his attorney did not more aggressively challenge a witness on his testimony that defendant said he was going to kill Ronald K., which defendant claimed was untrue. Defendant further asserted that he wanted his attorney to present defendant's statement to a police officer, saying that Ronald K. had threatened defendant prior to defendant's assault. The trial court denied defendant's request to relieve his attorney, finding she had properly represented defendant, and noting that the parties were constrained by the rules of evidence and the trial court's rulings on evidentiary issues. The trial court said that defendant's attorney could best explain their trial strategy to defendant "when the time is right," and reminded defendant that they had not yet put on their defense case.

During closing arguments, defense counsel stated: "[Defendant] is guilty. He is guilty of the committing [*sic*] an assault, he is guilty of false imprisonment, and he is guilty of vandalism. He is not guilty of attempt[ed] murder on Misty [W.] or [Ronald K.], he is not guilty of child abuse likely to produce great bodily injury or death on the child, and he's not guilty of an assault with a deadly weapon."[2] With respect to self-defense, defense counsel noted that she "sort of glossed over the self-defense instruction" but that the jury did not "even have to discuss self-defense because you're

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

[2] Although defense counsel stated that defendant was guilty of simple assault, false imprisonment, and vandalism, defendant was not charged with, and the jury was not instructed on, false imprisonment or vandalism.

not going to find that the district attorney has proved beyond a reasonable doubt that on June 2nd [defendant's] actions were coupled with an intent to kill."

The jury was instructed on two counts of attempted murder with a deadly and dangerous weapon (Pen. Code, §§ 664, 187, subd. (a), 12022, subd. (b)(1)),[3] felony child endangerment (§ 273a, subd. (a)), and three counts of assault with a deadly weapon (§ 245, subd. (a)(1)). As to the felony assault charges, the jury instructions also included the lesser included offense of simple assault. The jury was further instructed that self-defense was a defense to the assault charges. The jury found defendant guilty on one count of attempted murder of Ronald K. with a dangerous and deadly weapon, child abuse likely to produce great bodily injury, and three counts of assault with a deadly weapon. They could not reach a verdict on the charge of attempted murder of Misty W., and the trial court granted the People's motion to dismiss the charge.

At sentencing, the trial court commented that the record was "abundantly clear" that defendant still denied the allegations against him. The trial court sentenced defendant to an aggregate term of 16 years plus 75 years to life, comprised of 25 years to life for count one (attempted murder), plus one year consecutive for the weapon use enhancement, 25 years to life for count five (assault with a deadly weapon), 25 years to life for count six (assault with a deadly weapon), plus five years consecutive each for counts one, five, and six, for a prior strike conviction. Defendant's prison terms for counts three and four were stayed pursuant to section 654.

---

[3] Undesignated statutory references are to the Penal Code.

DISCUSSION

Defendant contends that defense counsel improperly conceded his guilt when she asserted at closing that defendant was guilty of committing simple assault.[4] Relying primarily on *McCoy v. Louisiana* (2018) ___ U.S. ___ [200 L.Ed.2d 821] (*McCoy*), defendant argues that his attorney violated his Sixth Amendment right to counsel by overriding defendant's desire to maintain his innocence and pursue acquittal. We are not persuaded.[5]

"[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant . . . has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.' [Citations.] Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." (*Florida v. Nixon* (2004) 543 U.S. 175, 187.) Accordingly, in *McCoy*, the United States Supreme Court held that defendant has the sole authority to decide whether to admit guilt or maintain innocence, regardless as to whether it was an advisable legal strategy. (*McCoy*, *supra*, 200 L.Ed.2d at p. 827.)

In *McCoy*, the defendant was charged with three murders and "vociferously insisted on his innocence and adamantly objected to any admission of guilt." (*McCoy, supra*, 200 L.Ed.2d at p. 825.) However, his attorney told the jury in his opening statement that there was " 'no way reasonably possible' that they could hear the

---

[4] Defendant argues that his counsel improperly conceded guilt on assault, vandalism, and false imprisonment, but only assault is at issue, because defendant was not charged with vandalism or false imprisonment.

[5] The People's brief analyzes this as an ineffective assistance of counsel claim, which is not the correct standard. Under *McCoy*, a counsel's admission of guilt against a defendant's express wishes is structural error, which is not subject to harmless error review. (*McCoy, supra*, 200 L.Ed.2d at p. 833.)

prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death.' " (*Id.* at p. 828.) The defendant immediately protested, complaining to the trial court outside the jury's earshot that his attorney was " 'selling [him] out' " by admitting he committed the murders. (*Ibid.*) The trial court cautioned the defendant against further outbursts and permitted his counsel to continue his opening statement, during which he repeated that defendant committed the murders. (*Id.* at pp. 828-829.) During trial, the defendant testified on his own behalf, maintaining his innocence, and presenting a highly dubious alibi defense. (*Ibid*.) In closing, defense counsel "reiterated that McCoy was the killer," telling "the jury that he 'took [the] burden off of [the prosecutor].' " The jury found the defendant guilty of first degree murder on all three counts. (*Id.* at p. 829.)

The defendant filed a motion for new trial arguing that "the trial court violated his constitutional rights by allowing [counsel] to concede McCoy 'committed three murders,' [citation], over McCoy's objection." (*McCoy, supra*, 200 L.Ed.2d at p. 829.) The Louisiana Supreme Court denied the motion for new trial, "ruling that defense counsel had authority so to concede guilt, despite the defendant's opposition to any admission of guilt . . . because counsel reasonably believed that admitting guilt afforded McCoy the best chance to avoid a death sentence." (*Ibid.*)

The United States Supreme Court reversed, finding "counsel's admission of a client's guilt over the client's express objection" is structural error, as it "blocks the defendant's right to make a fundamental choice about his own defense." (*McCoy, supra*, 200 L.Ed.2d at p. 826.) It explained that "[w]hen a client expressly asserts that the objective of '*his* defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. [Citations.]" (*Id.* at p. 831.) Thus, the Supreme Court concluded that "admission of [defendant's] guilt despite [defendant's] insistent objections [is] incompatible with the Sixth Amendment." (*Id.* at p. 834.)

6

*McCoy* is only implicated where the attorney concedes guilt "over the defendant's intransigent and unambiguous objection." (*McCoy, supra*, 200 L.Ed.2d at pp. 829, 834.) "When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest" and the defendant remains silent, "counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." (*Florida v. Nixon, supra*, 543 U.S. at p. 192.) To obtain relief under *McCoy*, the record must show: (1) that defendant's plain objective is to maintain his innocence and pursue an acquittal, and (2) that trial counsel disregards that objective and overrides his client by conceding guilt. (*People v. Eddy* (2019) 33 Cal.App.5th 472, 482-483, citing *McCoy,* at pp. 827, 829-833.) "[W]e have found no authority, nor has [defendant] cited any, allowing extension of *McCoy's* holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense." (*People v. Lopez* (2019) 31 Cal.App.5th 55, 66.)

Here, unlike in *McCoy*, defendant did not communicate to his attorney, or to the trial court, that he objected to his counsel's concession of guilt during the closing argument. Although defendant denied guilt and sought to admit evidence supporting the theory that he was acting in self-defense, nothing in the record indicates that he voiced an "intransigent objection" to his counsel's trial strategy to concede that he committed simple assault. Defendant also did not move for a new trial based on his counsel's admission. Without any evidence that defendant objected to counsel's concession, or otherwise made clear to counsel that he did not wish to concede guilt of simple assault during closing arguments, *McCoy* does not apply. (See, e.g., *People v. Lopez*, *supra*, 31 Cal.App.5th at p. 66 [*McCoy* inapplicable where there was no evidence the defendant objected to his counsel's decision to concede guilt]; *People v. Franks* (2019) 35 Cal.App.5th 883, 891 [*McCoy* inapplicable where the defendant denied guilt but never made clear a desire to pursue innocence as his defense].)

7

## DISPOSITION

The judgment is affirmed.


/s/ _____
HOCH, J.


We concur:


/s/ _____
MURRAY, Acting P. J.


/s/ _____
KRAUSE, J.

8