Filed 12/28/22

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br><br>ANTHONY KEVIN ROSS,<br><br>     Defendant and Appellant. | A163242<br><br>(Del Norte County Super. Ct.<br>No. CRPB19-5129) |

Defendant Anthony Kevin Ross appeals after a jury convicted him of battery on a non-confined person by a prisoner (Pen. Code, § 4501.5)[1] and found true two prior "strike" convictions (§ 667, subds. (b)–(i)). On appeal, he argues: (1) his attorney violated his Sixth Amendment rights by conceding his guilt; and (2) the matter should be remanded for resentencing due to Senate Bill No. 567. In the unpublished portion of this opinion, we reject defendant's Sixth Amendment challenge. But in the published portion, we agree that a remand for resentencing is required due to postsentencing statutory amendments made by Senate Bill No. 567.

---

\*     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part A of the Discussion.

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with one count of battery on a non-confined person (here, a correctional counselor) by a prisoner (§ 4501.5). The People also alleged defendant had two prior strike convictions. (§ 667, subds. (b)–(i).)

Initially, attorney George Mavris represented defendant. In November 2020, weeks before the initial date set for trial, Mavris filed a motion to withdraw as counsel, citing " 'irreconcilable conflict.' " The court held a *Marsden*[2] hearing, relieved Mavris as counsel, then appointed James Fallman. Trial was continued and eventually took place in July 2021. The jury ultimately found defendant guilty of the section 4501.5 count and found the two prior strike allegations true. The following summarizes some of the relevant trial evidence.

Correctional counselor B.B. testified as follows. B.B. works at Pelican Bay State Prison, which is a "level four" prison, meaning generally that it has more security and houses prisoners with higher "classification points." Classification points are based on various factors, such as sentence length, age, and behavior. In July 2018, B.B. met with defendant, a level four prisoner, in his office. Defendant did not have the classification points necessary to be placed in a level three facility, and B.B. refused defendant's request to recommend an "override" to the committee responsible for placement decisions. When B.B. told defendant he could ask the committee himself, defendant cursed and yelled at B.B. and demanded a new counselor.

B.B. told defendant he was "acting childish" and to calm down, and defendant cursed and continued yelling. B.B.—who remained calm and seated behind his desk—then told defendant, "why don't you act like a man

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

and show some respect?" In response, defendant stood and charged B.B. saying, "I am a man." Defendant punched B.B. in the eye while he was still seated. B.B. yelled at him to "get down"—a phrase correctional officers use when there is an issue with an inmate. Defendant repeatedly struck B.B.'s face and body and scratched his head and arms. B.B. put up an arm to block defendant, then started punching back. B.B. could not escape the office they were in.

About 30 seconds later, other correctional officers arrived and used pepper spray, but defendant did not stop striking B.B. Defendant resisted being handcuffed and struck at the correctional officers around him. B.B. suffered multiple scratches and bruises.

Two of the responding correctional officers corroborated B.B.'s account of the attack. One of the officers described defendant's punches as being like "windmills." The hearing officer at defendant's rule violation report (RVR) hearing testified that defendant pleaded guilty to the administrative charge of battering B.B. Evidence was introduced that defendant wrote in an intercepted outgoing letter[3] that "I got stuck in the hole again for taking off on my CC I [(correctional counselor I)] because he called me a [sic] lame."

After the People rested, the defense presented no evidence. The parties and the trial court then discussed jury instructions. Upon receiving some of the instructions, the court said: "I'm in receipt of simple battery 960, Element 2, is typically not given unless there is evidence of self-defense." Defense counsel Fallman responded, "That's fine. I just brought the form." The prosecutor said she saw no evidence of self-defense, and the court agreed.

---

[3] All outgoing nonlegal mail by the prisoners is monitored. If the contents of mail are deemed "not allowable," the mail is "stopped" and returned to the inmate.

3

Defendant interjected, saying, "Man, you are fired" and "I will represent myself." The court initially continued to talk about the instructions, asking if it was acceptable to the parties to "just remove Element 2," and both attorneys affirmed it was. Defendant then cursed, saying: "Hey, why don't you f[***] up your son, so what?" When the court tried to interrupt him, defendant continued to curse at the court and the prosecutor, and made other incoherent statements. The court had him removed from the courtroom, indicating he could return when he could behave appropriately.

The court took a short recess so that Fallman could speak with defendant. Upon returning, Fallman told the court that he tried to talk with defendant, but that defendant refused and simply repeated his desire to fire Fallman. The court asked Fallman to speak with defendant again and see if he wanted to come back for a *Marsden* hearing. Fallman did as instructed, but defendant only said he wanted to go back to his cell. The court stated for the record that it had "nothing to hang [its] hat on why or what [defendant] purports *Marsden* to be," and it asked Fallman if he had anything to add. (Italics added.) Fallman said: "No. I just think there comes a point where he tries to get rid of his attorney. He already got rid of Mr. Mavris, who I note to be an excellent attorney before me on this same case. So I don't know. I think it's probably provocation. There is no reason for it." The court then denied *Marsden* relief, finding no basis for it and confirming again that Fallman also saw no basis for it.

The trial continued with defendant in absentia. The court instructed the jury on the section 4501.5 count and the lesser included offense of simple battery. During closing argument, Fallman admitted defendant touched B.B. willingly, in a harmful or offensive manner, but argued there was no pre-planning or weapon involved. Fallman asked the jury to find defendant

guilty of the lesser included offense of misdemeanor battery, arguing such result was fair because defendant already suffered consequences as a result of the RVR and, had this incident happened on the streets, it would have been a misdemeanor. Fallman suggested that defendant overreacted because of the things B.B. said to him, and because he is an inmate on a level four yard who did not want to be perceived as a "wimp."

The jury found defendant guilty of the section 4501.5 count. In a bifurcated trial, the jury found both prior strike allegations true.

During sentencing, defendant was invited to make a statement but declined to do so. Upon finding six aggravating factors true and no mitigating factors, the trial court sentenced defendant to the upper term of four years for the section 4501.5 count, doubled to eight years under the Three Strike Law. Defendant appealed.

## DISCUSSION

### A. Defense counsel's concession during closing argument

Citing *McCoy v. Louisiana* (2018) 584 U.S. __ [138 S.Ct. 1500] (*McCoy*), defendant argues that Fallman violated his Sixth Amendment right to assistance of counsel by conceding his guilt of battery.

In *McCoy*, a capital defendant's trial counsel concluded that the evidence against the defendant was overwhelming, and that absent a concession as to guilt, a death sentence would be impossible to avoid at the penalty phase. (*McCoy, supra,* 138 S.Ct. at p. 1506.) Prior to trial, counsel told the defendant he would concede guilt, and the defendant vociferously objected. (*Ibid.*) During his opening statement at the guilt phase, counsel conceded guilt anyway, causing the defendant to protest and accuse counsel of " 'selling [him] out.' " (*Id.* at pp. 1506–1507.) During trial, the defendant took the stand and pressed an alibi defense, but during closing argument,

5

defense counsel again conceded guilt. (*Id.* at p. 1507.) The jury ultimately returned three death verdicts and the defendant appealed, arguing the trial court violated his rights by allowing defense counsel to concede guilt. (*Ibid.*)

Though recognizing that trial management is a lawyer's province, the *McCoy* court concluded that some decisions—including the autonomy to decide that the objective of the defense is to assert innocence—are reserved for the client. (*McCoy*, *supra*, 138 S.Ct at p. 1508.) Thus, "[w]hen a client *expressly asserts* that the objective of 'his defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (*Id.* at p. 1509, original italics omitted and italics added.) Furthermore, violation of a defendant's "Sixth Amendment-secured autonomy" is structural error. (*Id.* at p. 1511.)

The *McCoy* court distinguished the case from *Florida v. Nixon* (2004) 543 U.S. 175, which held defense counsel did not negate the defendant's autonomy where the defendant "complained about the admission of his guilt only after trial" but was " 'generally unresponsive' during discussions of trial strategy and 'never verbally approved or protested' counsel's proposed approach." (*McCoy*, *supra*, 138 S.Ct. at p. 1509.) As the court explained: "If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with *express statements* of the client's will to maintain innocence, however, counsel may not steer the ship the other way." (*Ibid.*, italics added.)

In California cases applying *McCoy*, the *McCoy* rule barring concessions of guilt "applies only where defendant actively opposes counsel's concession." (*People v. Villa* (2020) 55 Cal.App.5th 1042, 1056; see, e.g., *People v. Franks* (2019) 35 Cal.App.5th 883, 891 [under *McCoy*, "a defendant

6

must make his intention to maintain innocence clear *to his counsel*, and counsel must override that objective by conceding guilt"]; *People v. Lopez* (2019) 31 Cal.App.5th 55, 66 [finding no authority extending *McCoy's* holding "to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense"]; *People v. Burns* (2019) 38 Cal.App.5th 776, 784.)

Here, there appears no dispute Fallman conceded that defendant, who indisputably was a prisoner, committed battery on B.B., who indisputably was a nonprisoner. But the record does not reflect that defendant ever *expressly* objected to Fallman's strategy of conceding guilt in order to persuade the jury that the lesser included offense of misdemeanor battery better reflected the circumstances of the case. Nor does the record disclose a clear statement from defendant to Fallman that defendant wanted to maintain his innocence.

Defendant's briefing on appeal acknowledges that when he tried to remove Fallman as counsel mid-trial he "did not explicitly state that the ground for removal was that he wished to pursue a self-defense claim and counsel was not honoring that aim." Defendant suggests, however, that his desire to maintain innocence was sufficiently clear because: (1) before trial, he had Mavris removed due to Mavris's refusal to pursue a self-defense claim, which meant Fallman and the court were aware of his desire to pursue a self-defense strategy and not concede guilt; and (2) during trial, when Fallman agreed with the court that the evidence was insufficient to justify a self-defense instruction, defendant sought to have Fallman removed. We are unpersuaded.

As a preliminary matter, we note that defendant provides no citation to the record showing that he had Mavris removed over Mavris's refusal to

pursue a self-defense claim.  To the contrary, the record reflects that Mavris himself moved to withdraw citing " 'irreconcilable conflict' " and provided a number of circumstances supporting his withdrawal at the November 2020 *Marsden* hearing.  Though defendant appears to claim that Mavris knew defendant wanted to maintain innocence, the record does not clearly support that.  Nor does the record reflect that defendant expressed opposition to a concession of guilt as the defendant did in *McCoy*.[4]  (*McCoy*, *supra*, 138 S.Ct. at p. 1506.)

Moreover, the trial court relieved Mavris as counsel and appointed Fallman in November 2020, then trial was continued for months to July 2021.  Fallman was not present at the 2020 *Marsden* hearing.  There is no indication Fallman knew in any detail what was said at that hearing.  Nor does defendant point to any evidence that his claimed desire to maintain innocence to the exclusion of all other defense strategies was ever communicated to Fallman or the trial court.

---

[4]     At the November 2020 *Marsden* hearing, Mavris explained he was moving to withdraw because:  (1) defendant was talking nonsensically to him about Mavris allegedly sitting next to defendant's girlfriend in court; (2) at one meeting, defendant told Mavris he assaulted the victim, but at another meeting he said it was self-defense, and gave a different version of the facts, which made Mavris concerned about perjury; and (3) Mavris expressed concern that defendant was going to attack him and said he did not want to sit next to him.

That Mavris reported defendant's mention of self-defense on this one occasion presents a very different situation than in *McCoy*, where McCoy became furious prior to trial at his attorney's mention of conceding guilt, directed his attorney not to concede guilt, and the record showed that McCoy's attorney *knew* McCoy was completely opposed to conceding guilt. (*McCoy*, *supra*, 138 S.Ct. at p. 1506.)  And unlike the present case, McCoy told the judge during trial that his attorney was " 'selling [him] out' " by conceding guilt, and McCoy himself testified and maintained innocence. (*Id.* at pp. 1506–1507.)

We are not persuaded that defendant's position on innocence was sufficiently clear because of the timing of his request to remove Fallman as counsel during trial. Defendant's reliance on what might be implied from the circumstances simply fails to satisfy *McCoy*, which requires *express* statements of the client's will to maintain innocence. Ultimately, defendant never actually stated he was trying to remove Fallman because he wanted to maintain his innocence based on self-defense. Instead, defendant just cursed, told Fallman he wanted him fired, and said incomprehensible things. Similarly, when Fallman spoke with defendant after his outbursts to see if he wanted to return to court for a *Marsden* hearing, defendant said only that he wanted Fallman fired and to return to his cell. Notably, when considering the *Marsden* issue in defendant's absence, the court and Fallman both indicated they had no idea what defendant's grounds for a *Marsden* removal would be.

Defendant's reliance on *People v. Eddy* (2019) 33 Cal.App.5th 472 is unavailing. In *Eddy*, the defense attorney claimed during his opening statement that the defendant was innocent and suggested that another person committed the murder at issue. (*Id.* at p. 477.) The defense failed to present an affirmative defense case, then defense counsel conceded during closing argument that the defendant committed voluntary manslaughter but maintained the defendant was not guilty of murder. (*Ibid.*) At a *Marsden* hearing held around the time of sentencing, the defense attorney told the trial court that prior to his closing argument concession, he *knew* the defendant had wanted to maintain his innocence and argue another person committed the murder. (*Id.* at p. 478.) The defendant himself also told the court he wanted to maintain his innocence from the outset. (*Id.* at pp. 478–479.) The defense attorney did not deny making the closing argument

9

concession despite the defendant's desire to maintain innocence. (*Id.* at p. 479.) Relying on this record, the *Eddy* court found the defendant's Sixth Amendment right to maintain his innocence under *McCoy* was violated. (*Id.* at pp. 481–483.) *Eddy* does not aid defendant's case, as the facts in *Eddy* bear no resemblance to those here.

On the record before us, defendant's claim of error under *McCoy* fails.

## B. Senate Bill No. 567

In sentencing defendant, the trial court selected the upper term for the section 4501.5 conviction. The court found true the two crime-based aggravating factors set out in California Rules of Court, rule 4.421(a)(1) and (a)(3),[5] namely, that "(1) [t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" and "(3) [t]he victim was particularly vulnerable." With regard to the rule 4.421(a)(3) factor, the court indicated that B.B. was particularly vulnerable because he was alone in his office with defendant, without being behind glass or any type of protection. The court also found true the following four aggravating factors set forth in rule 4.421(b): "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; [¶] (2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170(h); [¶] . . . ; and [¶] (5) The defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (Rule 4.421(b)(1)–(3), (5).) The court found no factors in mitigation and

---

[5] All further rule references are to the California Rules of Court.

concluded the aggravating factors "far outweigh[ed]" those in mitigation, justifying the upper term.

While this appeal was pending, the Legislature enacted Senate Bill No. 567 (Senate Bill 567), which amended section 1170, subdivision (b), to require that when a statute specifies three potential terms of imprisonment, a court must presumptively impose the middle term.  (§ 1170, subd. (b)(1), as amended by Stats. 2021, ch. 731, § 1.3.)  Moreover, a court may not impose the upper term unless aggravating circumstances "justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.)  Under section 1170, subdivision (b)(3), however, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Defendant presently argues he must be resentenced pursuant to Senate Bill 567 because "the trial court imposed the upper term of four years without any consideration of whether the aggravating factors were true beyond a reasonable doubt."  In response, the People properly concede that Senate Bill 567 is retroactive under *In re Estrada* (1965) 63 Cal.2d 740, and that it applies here to defendant's nonfinal judgment.  (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*).)  The People also acknowledge the trial court relied on some aggravating factors that were neither stipulated to by defendant nor found true by the jury beyond a reasonable doubt. Nevertheless, the People contend resentencing is unnecessary because the court properly relied on defendant's criminal history to justify imposition of

11

the upper term (rule 4.421(b)) and the court "unquestionably" would have found true the remaining crime-based aggravating factors (rule 4.421(a)).

Initially, we note there appears to have been no error as to the court's reliance on the aggravating factors articulated in rule 4.421(b), even under the changes made by Senate Bill 567. Notably, in finding defendant guilty of the section 4501.5 count, the jury necessarily found beyond a reasonable doubt that defendant was a prison inmate, an element of the charged offense, and also found beyond a reasonable doubt that defendant had two prior strike convictions, one for second degree robbery in 2015 and one for assault with a deadly weapon in 2007.

Moreover, section 1170, subdivision (b)(3), explicitly permits a trial court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." Here, the record on appeal includes certified records of defendant's prior convictions which support the court's consideration of the rule 4.421(b)(1), (2), (3) and (5) aggravating factors. Specifically, the certified records document defendant's conviction of multiple crimes—robbery, burglary, assault with a deadly weapon, drug possession—over the last decade and a half, as well as the prior prison sentences he served. (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions are " 'numerous' "].) According to the certified records, defendant not only absconded on parole but he committed new offenses while on parole and probation. Thus, to the extent the trial court made its sentencing decision based on the aggravating circumstances set forth in rule 4.421(b), no error appears.

Nonetheless, to the extent the trial court's imposition of the upper term was based on its own findings of fact regarding the crime-based aggravating

12

factors in rule 4.421(a)(1) and (a)(3), then it committed error under Senate Bill 567. That is because, contrary to the dictates of the new law, defendant had not stipulated to the facts underlying these factors, nor were the facts found true beyond a reasonable doubt by a jury or by a judge in a court trial.

Courts, however, have concluded this type of error is subject to harmless error review. In *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), this court recently articulated the following standard for harmless error: " '[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless." (*Id*. at p. 500.) In setting out that standard, we relied on *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), which set forth the standard for Sixth Amendment error under *Cunningham v. California* (2007) 549 U.S. 270. (*Flores*, at p. 500.)[6]

Subsequent to *Flores*, several courts have additionally considered "whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error," thus incorporating a state law *Watson*[7] component to their harmless error analysis. (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112; *People v. Dunn* (2022) 81 Cal.App.5th 394, 408, review granted Oct. 12, 2022, S275655 (*Dunn*); *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022, S275942 (*Wandrey*); *People v. Lopez* (2022) 78 Cal.App.5th 459, 467 (*Lopez*)). Upon reflection, we find the rationale for adding a state law harmless error component both logical and compelling: " ' "[D]efendants are entitled to sentencing decisions

---

[6]    The California Supreme Court denied a request for depublication of *Flores* and also declined to review the matter on its own motion. (*People v. Flores* (June 15, 2022, S274232).)

[7]    *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*Lopez*, at p. 467.) In situations where a trial court imposed a sentence without exercising informed discretion, " 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Ibid.*; *Zabelle*, at p. 1113; *Wandrey*, at p. 982; *Dunn*, at p. 408.)

Accordingly, we will apply the two-step harmless error standard articulated in *Lopez*. To determine whether prejudice resulted from a trial court's failure to apply the new version of the sentencing law, we first ask "whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt all of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* . . . , that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that

14

remand to the trial court for resentencing is necessary." (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11, italics omitted.)[8]

Starting with *Lopez*'s first inquiry, we cannot conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt the aggravating factors concerning the crime as set out in rule 4.421(a)(1) and (a)(3). Indeed, our Supreme Court has cautioned that "to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval, supra*, 41 Cal.4th at p. 840.) Here, the crime-based rule 4.421(a)(1) and (a)(3) aggravating factors are precisely of this nature, requiring a subjective evaluation as to whether the victim was

---

[8]    *Lopez*'s analysis aligns with the thoughts expressed by Justice Liu in his concurring statement to the Supreme Court's denial of depublication and review in *Flores*. Noting that Senate Bill 567 amended section 1170, subdivision (b), to provide the upper term may be imposed " 'only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term,' " Justice Liu queried whether "it may no longer be true that 'the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term' " and whether any aggravating fact (except a prior conviction) relied on by a trial court " 'that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*People v. Flores* (June 15, 2022, S274232), conc. statement of Liu, J., italics omitted.)

Thus, we concur in the *Lopez* analysis, which asks at the first step whether a reviewing court can conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors the trial court relied on, not simply at least one aggravating factor. (*Lopez, supra*, 78 Cal.App.5th at pp. 466–467 & fns. 10–11; but see *Dunn, supra*, 81 Cal.App.5th at pp. 409–410 [rejecting this approach and applying the *Watson* standard at the first step].)

*particularly* vulnerable, and whether the crime involved *great* violence, great bodily harm, threat of great bodily harm, or other acts disclosing a *high degree* of cruelty, viciousness, or callousness.  (Rule 4.421(a)(1) & (3); see *Sandoval*, at p. 840 [indicating the rule 4.421(a)(3) aggravating factor required "an imprecise quantitative or comparative evaluation of the facts"].)  In other words, "[s]ome degree of speculation would necessarily be required for us to conclude the jury would have agreed with the trial court's evaluation." (*Wandrey*, *supra*, 80 Cal.App.5th at p. 983.)

We turn to *Lopez*'s second inquiry, which asks whether we can be certain, to the degree required by *Watson*, *supra*, 46 Cal.2d 818, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a few of the aggravating factors, rather than all of the factors on which it previously relied.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)  We cannot answer this inquiry in the affirmative.  This case involved a crime by an inmate offender where the sentence was already enhanced by strike priors that were pleaded and proved.  We cannot conclude it is reasonably probable that the trial court, in the face of Senate Bill 567's new presumption in favor of the middle term, would have exercised its discretion the same way had it known it could not rely on the rule 4.421(a)(1) and (a)(3) aggravating factors.  (*Watson*, at p. 836.)  In order to give Senate Bill 567 its full effect, a remand for resentencing is appropriate.

## DISPOSITION

The matter is remanded for resentencing in light of section 1170, subdivision (b), as amended by Senate Bill 567.  In all other respects, the judgment is affirmed.

FUJISAKI, ACTING P.J.

WE CONCUR:

PETROU, J.

RODRÍGUEZ, J.

*People v. Ross* (A163242)

17

Trial Court:       Del Norte County Superior Court

Trial Judge:      Hon. J. Darren McElfresh

Counsel:          Law Offices of Lillian Hamrick, Lillian Hamrick, under
                  appointment by the First District Appellate Project, for
                  Defendant and Appellant

                  Rob Bonta, Attorney General of California, Lance E.
                  Winter, Chief Assistant Attorney General, Jeffrey M.
                  Laurence, Senior Assistant Attorney General, Eric D.
                  Share, Supervising Deputy Attorney General, and
                  Viktoriya Chebotarev, Deputy Attorney General for
                  Plaintiff and Respondent